UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**PHIL EHR FOR CONGRESS CAMPAIGN**
**COMMITTEE, a Florida Unincorporated**
 **Association**
**PO Box 5651**
**Tallahassee, FL 32314**
          **Plaintiff,**

v.

**GRASSROOTS ANALYTICS, INC., a**
**Delaware Corporation**
**806 7th Street NW, Suite 300**
**Washington DC 20001**
       Serve: **CORPORATION SERVICE**
         **COMPANY, Reg. Agt.**
       **1090 VERMONT AVE. NW**
       **Washington DC 20005**

       **Defendant.**

Civil Action No. _____

**COMPLAINT**
**AND JURY DEMAND**

This civil action is brought by Plaintiff PHIL EHR FOR CONGRESS CAMPAIGN COMMITTEE, a Florida Unincorporated Association, against GRASSROOTS ANALYTICS, INC., a corporate entity duly constituted under the laws of the State of Delaware, on the grounds and for the reasons delineated hereinbelow.

## INTRODUCTION

1. This civil action arises from the relationship between the campaign committee for Phil Ehr, a Democratic candidate in Florida running for federal office, and Grassroots Analytics, Inc. (hereinafter referred to at times as "G.A.") a corporation which, among other activities, engages in providing data intended to raise funds for political candidates.

2. Discussions between representatives of the Phil Ehr for Senate Campaign Committee and defendant G.A. led to a written agreement that the company would provide data services for a phone-based texting campaign, designed solely to raise funds for the senate campaign committee's purposes, as those purposes are outlined and controlled by federal campaign laws. For the reasons set forth below, the written agreement is not attached to this Complaint.

3. The plaintiff campaign committee asserts that, while certain services were provided, those services were either decidedly inadequate or not provided at all, failing to meet even minimal professional political fundraising standards.   These failures are the primary basis for the instant action.

## JURISDICTION

4. This Court has original jurisdiction over the subject matter of this civil action through the

operation of 28 U.S.C. § 1332 (a), insofar as: (a) the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest, and (b) the Plaintiff and Defendant are citizens of different states.   All members of Plaintiff are citizens of the State of Florida, while Defendant is a Delaware corporation with a principal place of business in the District of Columbia.

5.  Defendant corporation Grassroots Analytics, Inc., is subject to the *in personam* jurisdiction of this Court in that, while it is a corporation incorporated in the State of Delaware, Grassroots Analytics has its principal place of business in Washington, D.C.

## VENUE

7.  Venue is proper in the District of Columbia, pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2).   Defendant Grassroots Analytics maintains its principal place of business in the District of Columbia.

## PARTIES

8.  Plaintiff PHIL EHR FOR CONGRESS CAMPAIGN COMMITTEE (also referred to as "Ehr CCC") is an unincorporated association formed by operation of federal campaign law on October 17, 2023, to serve as the campaign entity supporting the candidacy of Phillip Ehr for the U.S. House of Representatives (Florida - 28th District).   The Ehr CCC is distinct from the "PHIL EHR FOR SENATE CAMPAIGN COMMITTEE," which was an unincorporated association formed by operation of federal campaign law on July 17, 2023, to serve as the

campaign entity supporting the candidacy of Phillip Ehr for the U.S. Senate seat representing the State of Florida.

9. Defendant GRASSROOTS ANALYTICS, INC., is a for-profit corporate entity chartered in Delaware, with its principal place of business in Washington, D.C.    Defendant G.A. is, on information and belief, the successor-in-interest to an entity known as GRASSROOTS ANALYTICS, LLC, located in Rutland, Vermont.

## WRITTEN AGREEMENT

10. Services provided by Grassroots Analytics, LLC, to the Ehr for Senate Campaign Committee, were conducted in accordance with a "Services Agreement," dated July 18, 2023. This written contract contains a Confidentiality clause, purporting to effectively preclude public disclosure of the precise terms and conditions of the agreement.

(a) Plaintiff Ehr for Congress questions whether it is subject to the terms and conditions of this agreement at all, insofar as it was entered into by different entities than the parties to this litigation;

(b) Assuming *arguendo* that the July 2023 contract binds these parties, then given the public nature of political campaigns, the federal statutes pertaining to full disclosure of campaign donations and expenditures, and public policy considerations, Plaintiff questions the enforceability of most of the "confidentiality" sought in the agreement;

(c) the Plaintiff has refrained from attaching the July 2023 Services Agreement to this pleading until this Court has ruled on the necessity, or lack thereof, of redacting portions of the

agreement to shield it from public access.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**Summer 2023 - Ehr for Senate Campaign - Formation & Vendor Contact**

11.    Phil Ehr is an American citizen who after having served 26 years in the U.S. Navy, working his way up to the rank of Commander, decided to engage in electoral politics.   After unsuccessfully seeking the congressional seat in Florida's 1st Congressional District in 2020, Commander Ehr (U.S.N. - Ret.) decided in mid-2023 to seek the Democratic nomination for a U.S. Senate seat from Florida, in the 2024 election cycle.

12.    During his initial preparatory steps, in June and July 2023, Commander Ehr began receiving assistance from several political consultants, and also began receiving solicitations from various campaign vendors.

13.    One of those political vendors was Danny Hogenkamp, a principal owner of a small political data firm called Grassroots Analytics, LLC, which had a presence in Rutland, Vermont, and an office in Washington, D.C.   Grassroots Analytics representatives contacted the Senate campaign on multiple occasions, asserting that Grassroots Analytics ("G.A.") had upgraded its database, that G.A. was able to provide high-quality data for fundraising purposes for a better price that any other political vendor, and that the Phil Ehr for Senate campaign would be well-served by utilizing G.A. as its primary fundraising vendor.

**Summer 2023 - Senate Campaign Services Agreement & Data License Contract**

14.     Following multiple discussions, David Keith, a consultant for the Phil Ehr for Senate campaign committee, received a contract drafted by Grassroots Analytics, LLC.    This document, entitled "Services Agreement," was primarily directed at a "text messaging program" wholly intended to serve as a fundraising vehicle for the Phil Ehr for Senate campaign committee.

15.     Based on the representations that Grassroots Analytics had ungraded its databases and was able to provide high-quality lists of potential donors, the "Phil Ehr for Senate" Campaign Committee signed the "Services Agreement" on July 18, 2023.

16.     Also on July 18, 2023, the Phil Ehr for Senate campaign committee and Grassroots Analytics, LLC, entered into a "Data License Agreement" governing what G.A. alleged was a company owned and generated "proprietary data compilation."

**Summer 2023 - Grassroots Analytics - Texting Campaign**

17.     A key component of the contractual obligations undertaken by G.A., in the Agreement which it drafted, was that "GA agrees to provide . . . quality assurance for text messaging program."    In reliance upon this express obligation, the Phil Ehr for Senate campaign committee agreed to a trial messaging run.

18. According to G.A., a large batch of text messages was then sent out in July 2023, over 5.3 million in number, which yielded donations to the Phil Ehr for Senate campaign, and for which the Phil Ehr for Senate paid several hundred thousand dollars to defendant G.A. Indeed, Grassroots Analytics Invoice # 9664, dated July 31 2023, acknowledges payments for "list rental service" of $254,989.83.

19. There was, in fact, less in campaign donations coming in from the texting campaign than it was costing the campaign in payments to Grassroots Analytics. Representatives of Grassroots Analytics assured Phil Ehr for Senate representatives that the situation was temporary, but the situation, through the summer of 2023 did not dramatically improve.

**Other Campaign Donation Sources**

20. During his 2020 Congressional campaign, Phil Ehr amassed over $ 2 Million in donations, and a list of thousands of individual donors. The goodwill generated in that campaign, and the thousands of Ehr donors, gave the Phil Ehr for Senate campaign committee a significant boost in early fundraising efforts.

21. In addition, to these primary fundraising sources, the Phil Ehr for Senate campaign committee utilized other professional political fundraising companies.

**Termination of Senate Candidacy**

22. In large measure due to the failure of anticipated returns on investments into professional fundraising by the Phil Ehr for Senate campaign, it was decided in October, 2023 by candidate Phillip Ehr to terminate his Senate candidacy. Continual billings by Grassroots Analytics, which charges exceeded the fundraising accomplishments by G.A., factored largely into this decision.

**Requests to Grassroots Analytics for Clarification of Claims**

23. In the Fall of 2023, through October and November, representatives of the Ehr campaign made repeated requests to Grassroots Analytics officers and/or employees for clarification of services performed and the basis for various invoiced charges.

24. These requests for clarification led to a conference call on December 22, 2023, between officers of Grassroots Analytics, including their Chief Financial Officer and General Counsel, and a Data Specialist, and multiple representatives of the Ehr campaign. During this call, the G.A. representatives repeatedly asserted that the Invoices advanced by G.A. were sufficient to explain the services rendered.

25. To the contrary, the campaign representatives asked for more information about the quality of data batches, the quality assurance protocols in place through the text messaging campaigns, the assessment of values ascribed to each data compilation, and related quality and pricing concerns. From that December, 2023, conference until mid-October 2024, no additional information was forthcoming from G.A., but it proceeded to demand additional payment in

excess of $346,000.

## CAUSES OF ACTION

### FIRST COUNT
### RESCISSION

26. The Plaintiff realleges and incorporates each jurisdictional and factual allegation of Paragraphs 1-25, as if set forth at length herein.

27. There were material terms in the Services Agreement(s) between the parties that were ambiguous and these ambiguities led to the ultimate frustration of the intent of the parties.

28. Among these ambiguous material terms are: (a) the categorization of data sets as either "high-dollar mobile numbers" or "low-value mobile numbers"; (b) the definitional parameters of variables such as "inventory of text messages," "length & type of text messages," and "volume of replies"; (c) the establishment of "fair market value" for "deliverables" or "objectives;" (d) the calculations to be used in all phases of G.A.'s pricing schedules; (e) the definitional parameters of "project phases" and the impact of a given phase on a price point.

29. These patent ambiguities were the focal point of the December 22, 2023 conference between the Ehr campaign reps and the Grassroots Analytics officers, as referenced in ¶¶ 24 and

25, *supra*.

29. These ambiguities most certainly frustrated the core purpose of the Ehr campaign, which was to raise money for a political campaign, and thereby led to the current situation, where political vendor G.A. seeks payment far in excess of any monies the vendor raised for the campaign.

30. Plaintiff invokes the principles of equity to preclude the unjust enrichment that defendant G.A. currently enjoys as a result of excessive payments that G.A. has received, and to declare that Plaintiff owes Defendant nothing.

## SECOND COUNT
## BREACH OF CONTRACT

31. The Plaintiff realleges and incorporates each jurisdictional and factual allegation of Paragraphs 1-25, as if set forth at length herein.

32. The Plaintiff is entitled to invoke the benefits of the agreements between Grassroots Analytics, LLC and the Phil Ehr for Senate campaign committee.

33. Defendant Grassroots Analytics had multiple obligations under the agreements referenced in ¶¶ 14 - 16, *supra*, including the requirement to provide professional-level data meeting the needs of a modern political campaign, including data capable of generating benefits to that campaign, and also to engage in fully-developed Quality Assurance programs to meet its clients'

needs and prevent horribly wasteful expenditures.

34. Defendant Grassroots Analytics materially breached its affirmative obligations under the subject agreements by providing substandard data and charging excessive prices for that substandard data, and by wholly failing to implement a professional, politically-geared Quality Assurance program.

35. Plaintiff has sustained significant damages, in the way of financial losses, as a proximate result of Defendant's material breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Phil Ehr for Congress Campaign Committee seeks Judgment against Defendant Grassroots Analytics, Inc., as follows:

### AS TO THE FIRST COUNT

1. A Declaration by this Court that the various agreements drafted by Grassroots Analytics are fatally defective because of the multiple, material ambiguities.

2. A Finding that the principles of equity are to be invoked and that the purported agreements are subject to rescission.

3. That this Court will award a sum certain, in excess of $75,000, as restitution to the Plaintiff for the unjust enrichment that Defendant Grassroots Analytics has enjoyed, and declare that

Plaintiff owes Defendant nothing.

4. Costs of suit including reasonable attorney fees pursuant to the agreement.

5. For such further Relief as this Court deems just and proper.

## AS TO THE SECOND COUNT

1. An Award of Compensatory Damages in excess of $75,000.

2. Prevailing Party Attorneys' Fees pursuant to the Services Agreement.

3. Costs of suit.

4. For such further Relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury.

DATED :   **October 24, 2024**

                                            Respectfully submitted,

                                            */s/ Daniel M. Press*
                                            Daniel M. Press
                                            D.C. Bar No. 419739
                                            CHUNG & PRESS, P.C.
                                            6718 Whittier Avenue, # 200
                                            McLean, VA 22101
                                            Ph. # 703-734-3800
                                            Fax # 703-734-0590
                                            dpress@chung-press.com