**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PHIL EHR FOR CONGRESS CAMPAIGN COMMITTEE, *Plaintiff*, v. GRASSROOTS ANALYTICS, INC., *Defendant*. | |

PHIL EHR FOR CONGRESS CAMPAIGN
COMMITTEE,

        *Plaintiff*,

  v.

GRASSROOTS ANALYTICS, INC.,

        *Defendant*.

Civil Action No. 1:24-cv-3035-APM

GRASSROOTS ANALYTICS, INC.,

        *Counterclaim-Plaintiff,*

  v.

PHIL EHR FOR CONGRESS CAMPAIGN
COMMITTEE; PHIL EHR FOR SENATE
CAMPAIGN COMMITTEE; PHIL EHR
(INDIVIDUALLY)

        *Counterclaim-Defendants.*

**GRASSROOTS ANALYTICS, INC.'S REPLY IN SUPPORT OF MOTION TO
ENFORCE SERVICE AS TO COUNTERCLAIM-DEFENDANT PHIL EHR OR, IN THE
ALTERNATIVE, TO REOPEN AND EXTEND THE SERVICE DEADLINE**

      Grassroots Analytics has been diligently attempting to serve Counterclaim-Defendant Phil

Ehr—whose congressional campaign initiated this litigation—since shortly after Grassroots

Analytics filed its counterclaims in December 2024. These efforts have included (i) requesting

counsel for Mr. Ehr's Campaign to accept service on his behalf, (ii) requesting and otherwise

investigating information about Mr. Ehr's current address and/or whereabouts to help aid the

service process, (iii) emailing Mr. Ehr a copy of the counterclaims directly to his personal email

address, and (iv) serving the counterclaims on Mr. Ehr's campaign manager at Mr. Ehr's last

known address. Given that "the provisions of Rule 4(e) should be liberally construed to effectuate

1

service and uphold the jurisdiction of the court," and that "[t]he rules governing service of process are not designed to create an obstacle course for plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction," *Ali v. Mid-Atl. Settlement Servs., Inc.*, 233 F.R.D. 32, 35–36 (D.D.C. 2006), *amended on reconsideration*, 235 F.R.D. 1 (D.D.C. 2006), *vacated on other grounds sub nom. Ali v. Tolbert*, 636 F.3d 622 (D.C. Cir. 2011) (internal quotation marks omitted), Grassroots Analytics respectfully requests that the Court find it has met its obligations under Rule 4.

Mr. Ehr does not address most of the arguments Grassroots Analytics made in its brief, nor does he engage with any of the authority Grassroots Analytics cited. His response is instead confined to challenging technical compliance with Federal Rule of Civil Procedure 4(e) by disclaiming that he resides at the Florida address where his campaign manager was served or that his campaign manager was authorized to accept service. As Grassroots Analytics explained in its motion, and discusses further below, its diligent and good faith efforts to effectuate service here are sufficient to satisfy Rule 4, especially since there is no serious question that Mr. Ehr has been aware of the counterclaims for several months. Accordingly, the Court should determine that Grassroots Analytics has discharged its service obligations and order Mr. Ehr to respond to the counterclaims within whatever reasonable period the Court deems appropriate.

In the alternative, if the Court is not satisfied that service has been effectuated, Grassroots Analytics respectfully requests that the Court reopen and extend the service deadline under Federal Rule of Civil Procedure 4(m), and permit service to be made by alternative means.

## ARGUMENT

### I.    Mr. Ehr Has Not Properly Contested Service, And Grassroots Analytics Has Satisfied Its Service Obligations Under Rule 4.

As a threshold matter, Mr. Ehr makes no effort to contest Grassroots Analytics' argument

that his campaign lacks standing to challenge service on his behalf, that the Ehr Campaign's filing of a standalone declaration from Mr. Ehr's campaign manager is not a valid means of challenging service, or that Mr. Ehr failed to properly contest service under Federal Rule 12(b)(5) by the operative deadline.[1] *See* Grassroots Analytics, Inc.'s Motion to Enforce Service as to Counterclaim-Defendant Phil Ehr or, the Alternative, to Reopen and Extend the Service Deadline Under Fed. R. Civ. P. 4(m) at 6–7, ECF No. 16 ("Mot."). *See also Texas v. United States*, 49 F. Supp. 3d 27, 31 (D.D.C. 2014), *aff'd*, 798 F.3d 1108 (D.C. Cir. 2015) ("Circuit precedent and the Local Rules of this Court provide that the failure to respond to an opposing party's arguments results in waiver as to the unaddressed contentions[.]").

The *only* part of Grassroots Analytics' motion that Mr. Ehr actually disputes is whether service was technically compliant with Federal Rule of Civil Procedure 4(e). Specifically, Mr. Ehr disclaims that he lives at the Florida address where service was effectuated, and that his campaign manager who accepted service at that address was authorized to accept service. Even setting aside the several reasons to doubt the veracity of Mr. Ehr's declaration (more on that below, *see infra* at 4–6), Mr. Ehr's response in fact confirms that Grassroots Analytics has substantially complied with Rule 4. Mr. Ehr admits that he resided at the Florida address where service was made until very recently. *See* Statement of Phil Ehr ¶ 5, ECF No. 17-1 ("Ehr Decl."). (confirming he was "resident at" that address until "shortly after the November 2024 election"). He confirms that he used that address as a campaign office. *Id.* And he fails to address—much less credibly rebut— that his campaign manager, Vanessa Brito, was at least temporarily residing at that address when

---

[1] It is unclear whether Mr. Ehr is now represented in this litigation by counsel for the Ehr Campaign ("Campaign Counsel"). Although Campaign Counsel previously disclaimed that he represents Mr. Ehr, Mr. Ehr's response to the instant motion was not only filed under Campaign Counsel's ECF credentials, but signed by Campaign Counsel. *See* Response of Phil Ehr to Motion to Enforce Service at 1–2, ECF No. 17 & docket text.

service was made. *See* Mot. at 5 (describing facts suggesting Ms. Brito was residing at the address); ECF No. 16-4 (process server affidavit). Taken together, these facts show that service was proper under either Rule 4(e)(1) or 4(e)(2)(B), especially given "[t]he general attitude of the federal courts" "that the provisions of Federal Rule 4 should be liberally construed in the interest of doing substantial justice."[2] 4 Charles Allen Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1083 (4th ed. 2019) (this approach is "consistent with the modern conception of service of process as primarily a notice-giving device.").

Courts in this District routinely find service adequate in similar circumstances. In *Roland v. Branch Banking & Tr. Corp.*, 149 F. Supp. 3d 61 (D.D.C. 2015) for example, the defendant challenged service on the basis that it had "no record of receiving the summons or complaint" and that the person the summons purportedly was served on was "not designated by law to accept service" on behalf of the defendant, which stated it had "no record of any current or former employee or officer…with that name." *Id.* at 65. The court found that, "[d]espite the lack of clarity in the process server's affidavit, in the absence of any other evidence," the defendants had "not successfully rebutted the prima facie evidence" from the process server's affidavit "that service was proper." *Id.* at 65–66 (explaining further that even if service was "imperfect," the defendant

---

[2] Rule 4(e)(1) provides that service may be made by complying with service rules in the state where service is made (here, Florida). *See* Fed. R. Civ. P. 4(e)(1). Florida law, in turn, states that, "[i]f the only address for a person to be served which is discoverable through public records is a . . . virtual office, or an executive office or mini suite, substituted service may be made by leaving a copy of the process with the person in charge of the private mailbox, virtual office, or executive office or mini suite, but only if the process server determines that the person to be served maintains a mailbox, a virtual office, or an executive office or mini suite at that location." Fl. Statute 48.031(6)(a). Rule 4(e)(2)(B) permits service by "leaving a copy . . . at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). *See also* Mot. 7–8.

"was clearly put on notice of Mr. Roland's claims").[3]

The same result should apply here. There is no legitimate question that Mr. Ehr has been aware of Grassroots Analytics' counterclaims for at least three months. Although Mr. Ehr suggests in his declaration that he was first "made aware" of the counterclaims recently by Ms. Brito, Ehr Decl. ¶ 1, this is directly contradicted by representations made by Campaign Counsel that he had personally spoken with Mr. Ehr in January about the counterclaims and Grassroots Analytics' attempts to serve him. Specifically, during a meet and confer on December 30, 2024, Campaign Counsel agreed to contact Mr. Ehr to alert him to the counterclaims and inquire about accepting service. *See* ECF No. 16-1 at 3 (counsel for Grassroots Analytics memorializing that Campaign Counsel agreed to "get in touch with Mr. Ehr to make sure he is aware of the counterclaims and to ascertain whether you are authorized to accept service on his behalf"). On January 2, 2025, Campaign Counsel stated that he had been trying to get in touch with Mr. Ehr and, after counsel for Grassroots Analytics followed up, Campaign Counsel represented on January 11 that, "[a]t this point, I am not representing Mr. Ehr and have no authority to accept service on his behalf." *Id.* at 1–2. Undersigned counsel followed up to ask specifically whether Campaign Counsel was confirming that he had in fact spoken with Mr. Ehr about Grassroots Analytics' counterclaims. *Id.* at 1 ("With respect to Mr. Ehr, are you confirming that you spoke with him and he declined to engage you to represent him or to authorize acceptance of service?"). Campaign Counsel responded on January 11 to confirm that he had personally spoken with Mr. Ehr. *Id.*

There also is little doubt that Mr. Ehr has been actively participating in this litigation, including very recently. It is his Congressional Campaign that filed this lawsuit. Campaign

---

[3] That the plaintiff in *Roland* was *pro se* should make no difference to the result; Rule 4 is uniquely given liberal construction regardless of the status of the party seeking to effectuate service. *See* 4 Charles Allen Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1083 (4th ed. 2019).

Counsel represented in mid-March that Mr. Ehr was providing necessary input into the Campaign's discovery responses. *See, e.g.*, Mot. at 10 n.6. In addition, discovery responses served by the Ehr Campaign on April 8 characterize the Campaign as merely an "'administrative shell,' . . . without ongoing fundraising, independent political contractors, or campaign volunteers, and with only one compliance vendor to file mandatory [Federal Elections Commission] reports," *see* Exhibit A at 2, which begs the question of who is really prosecuting (or defending) this lawsuit.

Likewise, although Mr. Ehr attests that, "[a]s of the date of this statement, I have not been personally served with any legal complaint . . . ," Ehr Decl. ¶ 4, Mr. Ehr was sent a copy of the complaint to his personal email address on February 5—a fact he does not address despite the fact that Grassroots Analytics noted it repeatedly in its Motion, *see* Mot. at 4 & n.2, 9, 10 n.5, 12, 13. *See also* ECF No. 16-2.

On these facts, the Court should find that service is effective, regardless of whether Grassroots Analytics has perfectly satisfied Rule 4(e)'s technical requirements. *See also, e.g.*, *Connors v. Hi-Heat Coal Co.*, 772 F. Supp. 1, 5 (D.D.C. 1991) ("[C]ourts are generally reluctant to adopt technical interpretations of rules concerning service . . . 'where actual notice of the commencement of the action and the duty to defend has been received by the one served, the provisions of Rule 4[(e)] should be liberally construed to effectuate service[.]'" (quoting *Karlsson v. Rabinowitz,* 318 F.2d 666, 668 (4th Cir. 1963))); *Quinn Emanuel Urquhart & Sullivan, LLP v. Rosenthal-Hidalgo*, No. 1:19-CV-01331, 2020 WL 7386320, at *1 (D.D.C. July 24, 2020); *Ali*, 233 F.R.D. at 35–36 (similar); *Kennedy-Jarvis v. Wells*, No. 13-1596, 2014 WL 12788955, at *4 (D.D.C. June 26, 2014) (similar); *Avianca, Inc. v. Corriea*, No. 85-3277, 1991 WL 496132, at *2 (D.D.C. May 31, 1991) (similar). *See also* Mot. at 8–11 (collecting additional cases).

6

II.   **The Court Should Alternatively Extend the Service Deadline and Permit E-Mail Service.**

As Grassroots Analytics explained in its motion, to the extent the Court is not satisfied that service was proper, Grassroots Analytics respectfully requests that the Court extend the service deadline under Rule 4(m), and order that service may be made by alternative means, including by email. *See* Mot. 11–12. Mr. Ehr's only response to this alternative request for relief is to oppose it on the basis that the extension would "delay this action between the actual parties to the agreement at issue." Response of Phil Ehr to Motion to Enforce Service at 1, ECF No. 17. It is not entirely clear what Mr. Ehr means by this statement, but suffice it to say that Grassroots Analytics—which has spent months (and thousands of dollars in costs and fees) attempting to effectuate and enforce service on Mr. Ehr, including through repeated outreach to Campaign Counsel to try to preserve this Court's resources—agrees that this action should not be further delayed by this sideshow over service. Enough is enough.

**CONCLUSION**

For the foregoing reasons and those stated in Grassroots Analytics' Motion, Grassroots Analytics respectfully requests that this Court find that service is complete and order Mr. Ehr to answer the complaint within whatever time period the Court deems appropriate. In the alternative, Grassroots Analytics respectfully requests that this Court extend the service deadline under Federal Rule of Civil Procedure 4(m), and confirm that service may be made by alternative means, including by email.


DATED: April 11, 2025                         Respectfully Submitted,

                                              By: /s/ Kathryn Ali
                                              Kathryn Ali (D.C. Bar No. 994633)
                                              Elizabeth Lockwood (D.C. Bar No. 1029746)
                                              Meghan Palmer (D.C. Bar No. 1736144)

7

Ali & Lockwood LLP
501 H Street NE, Suite 200
Washington, D.C. 20002
(202) 651-2475
katie.ali@alilockwood.com
liz.lockwood@alilockwood.com
meghan.palmer@alilockwood.com

Mark A. Lancaster (D.C. Bar No. 1620256)
General Counsel
Grassroots Analytics, Inc.
mlancaster@grassrootsanalytics.com

*Counsel for Defendant-Counterclaimant*
*Grassroots Analytics, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2025 I requested that Campaign Counsel accept service of the foregoing filing on Counterclaim-Defendant Phil Ehr's behalf, or alternatively, serve a true and correct copy of the filing on Mr. Ehr. Because it is now unclear whether Mr. Ehr is represented by counsel, *see supra* n.1, undersigned counsel did not attempt to directly serve Mr. Ehr by email. And because Mr. Ehr has now attested that he does not live at the address Grassroots Analytics identified as his last known address, and has otherwise refused to provide information about his whereabouts or current address, undersigned counsel has not sent a copy of this filing by mail to that address, under Local Rule 5.4(d)(1).

/s/ *Kathryn Ali*
Kathryn Ali

*Counsel for Defendant-Counterclaimant*
*Grassroots Analytics, Inc.*