IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHIL EHR FOR CONGRESS CAMPAIGN COMMITTEE, <br><br> *Plaintiff*, <br> v. <br><br> GRASSROOTS ANALYTICS, INC., <br><br> *Defendant*. <br> GRASSROOTS ANALYTICS, INC., <br><br> *Counterclaim-Plaintiff*, <br> v. <br><br> PHIL EHR FOR CONGRESS CAMPAIGN COMMITTEE; PHIL EHR FOR SENATE CAMPAIGN COMMITTEE; PHIL EHR (INDIVIDUALLY) <br><br> *Counterclaim-Defendants*. | Civil Action No. 1:24-cv-03035-APM |

**GRASSROOTS ANALYTICS, INC.'S PARTIAL OPPOSITION TO PHIL EHR'S MOTION TO EXTEND DISCOVERY DEADLINE**

There is no good cause for a wholesale modification of the discovery cutoff. Mr. Ehr was served with Grassroots Analytics Inc.'s ("Grassroots") counterclaims in mid-June and has made no effort to pursue any discovery since then. And while his motion offers an explanation for why he did not participate in discovery before he was personally served ("participating in discovery *prior to service* could be seen as waiving his jurisdictional defense"), it says nothing about why Mr. Ehr has not pursued any discovery in the intervening seven weeks. This is consistent with the lack of diligence his Campaign and shared counsel have shown in this case: discovery opened in January, yet his Campaign did not serve any discovery requests until mid-May, and even then it was only because the parties were up against a deadline to file a status report about the progress

1

of discovery. When there has been no pressing deadline, the Campaign has been difficult to engage, and largely dismissive of Grassroots' efforts to resolve disputes and move the case forward in a manner consistent with Federal Rule of Civil Procedure 1's command that the parties achieve "the just, speedy, and inexpensive determination of every action[.]" Because the burden of demonstrating good cause to modify the scheduling order rests with Mr. Ehr as the moving party, and because the touchstone of the good cause inquiry is diligence, the Court can stop there.

But even if the Court were to set all of this aside, Mr. Ehr still has not carried his burden to demonstrate good cause for a wholesale extension of discovery. Mr. Ehr asserts that his "motivations" and "interests" are different from his Campaign's, but never explains what discovery he has not had the opportunity to seek or produce. And given the breadth of the Campaign's discovery requests and Grassroots' responses, as well as Mr. Ehr's counsel's representations that Mr. Ehr was both assisting with the Campaign's discovery efforts and providing "every[]" document he had "on paper and his personal devices," it is hard to imagine what could be left to explore (and his motion offers no clues as to what this could be).

However, as Grassroots communicated to counsel for Mr. Ehr and the Campaign before they filed their motion, Grassroots does not object to a narrower modification of the case schedule to allow the parties to complete depositions timely noticed within the existing discovery period, which counsel have been diligent in pursuing but have had difficulty scheduling before the cutoff due to pre-planned travel and other conflicts. Accordingly, while Grassroots submits that there is no basis for a 120-day extension of all fact discovery, Grassroots agrees there is good cause for a more modest extension of the deadline to complete timely noticed party and third-party depositions, and joins Mr. Ehr's request in that limited fashion.

## BACKGROUND[1]

### A. Mr. Ehr's Campaign Files This Lawsuit and Then Fails to Diligently Pursue or Participate in Discovery.

In October 2024, the Ehr Campaign filed this lawsuit against Grassroots, asserting two claims: "rescission" and breach of contract. *See* Complaint, ECF No. 1 ("Compl."). Grassroots timely answered the complaint and counterclaimed for breach of contract and unjust enrichment against the Campaign, and against Phil Ehr in his individual capacity. *See* Grassroots Analytics, Inc.'s Answer, Affirm. Defenses, and Counterclaims, ECF No. 4.

Discovery opened on January 22, 2025, after this Court held a scheduling conference and then issued a Scheduling Order setting an August 21, 2025 fact discovery deadline. *See* Order, ECF No. 11. The Campaign did not serve any discovery requests until May 16—nearly four months into the discovery period and the same day the parties were under a court deadline to file a joint status report about the progress of discovery. *See* Attachment A to Ali Decl. (April 8, 2025–May 16, 2025 email chain between K. Ali and D. Press); Order at 2 ("The parties shall submit a Joint Status Report regarding the status of fact discovery on May 16, 2025"). Grassroots timely responded to those requests on June 16. *See* Attachment B to Ali Decl. (Grassroots' June 16, 2025 Discovery Responses). Because many of the Campaign's requests were overbroad and disproportionate (as just one example, Request for Production No. 5 was an improper catch-all request for "all documents supporting or in any way relating to any and all claims and defenses asserted in the above-captioned matter[,]"), *id.* at 36–37, Grassroots offered to meet and confer

---

[1] Facts concerning the substance of the parties' dispute and the events leading up to this lawsuit are set forth in Grassroots Analytics' opposition to Phil Ehr's motion to dismiss. *See* Counterclaim-Plf. Grassroots Analytics, Inc.'s Opp. to Counterclaim-Def. Phil Ehr's Mot. to Dismiss Counterclaim at 1–3, ECF No. 29. To avoid duplication, Grassroots does not repeat them here and instead focuses on the facts most pertinent to this motion.

regarding scope. *See id.* The Campaign ignored this offer.[2] *See* Ex. A. ¶ 2, Aug. 8, 2025 K. Ali Declaration ("Ali Decl."). Nevertheless, in an effort to keep the case moving forward in light of the approaching discovery cutoff, Grassroots undertook a significant document collection and review process, ultimately producing approximately 5,000 pages of documents, most of which Grassroots produced by July 14. *See id.*

For its part, Grassroots served its first set of requests for production on the Campaign in mid-February, for which responses were due on March 14. On March 17, after its deadline had expired, counsel for the Campaign contacted Grassroots' counsel by email to request an extension of time to respond, to which Grassroots consented. The Campaign served its responses three weeks later, Attachment C to Ali Decl. (Ehr Campaign's R&Os to Grassroots' First RFPs, Apr. 7, 2025), but they were deficient in many respects, as detailed in a letter Grassroots sent to the Campaign on April 24, 2025, *see* Attachment D to Ali Decl. (Apr. 24, 2025 Letter to D. Press). The Campaign never substantively responded to this letter, and although the Campaign's counsel represented on May 13 that he would update the Campaign's written discovery responses, the Campaign never did so. Ali Decl. ¶ 4.

Grassroots served a second set of requests for production on April 4, and interrogatories on April 17, which the Campaign answered on May 5 and May 29, respectively. *See* Attachment E to Ali Decl. (Ehr Campaign's R&Os to GA's Second Set of RFPs and First Set of ROGs). The Campaign also made two productions of documents in early April and early May. However, when Grassroots' counsel began reviewing the second production, they identified documents that appeared to be possibly privileged, immediately alerted Mr. Ehr's counsel to this issue, and deleted

---

[2] It was not until August 1—more than six weeks after Grassroots served its responses, and the same day Mr. Ehr filed this motion—that the Campaign ever raised any supposed deficiencies with Grassroots' responses and requested a meet and confer. *See* Ali Decl. ¶ 2.

4

the production from their files. After stating that they were conducting a "quick privilege review," the Campaign re-produced these documents (presumably with anything it had deemed privileged removed from the production) on May 15. *See* Attachment A at 6. Despite numerous requests by Grassroots' counsel, the Campaign has never produced a privilege log. Ali Decl. ¶ 7. In mid-June, Grassroots sent another letter to the Campaign raising additional deficiencies in its written discovery responses and document productions. *See* Attachment F to Ali Decl. (June 12, 2025 Letter to D. Press). The Campaign never responded to this letter, or Grassroots' counsel's attempts to follow up.[3] Ali Decl. ¶ 6. In addition, Grassroots contacted Mr. Ehr's counsel on July 3 to ask for clarifying information concerning certain text messages the Campaign had produced, and despite several attempts to follow up, did not receive any response until July 31. Ali Decl. ¶ 7.

In early July, Grassroots also served document and deposition subpoenas on two former Ehr Campaign staffers, David Keith and Jake Briggs. Mr. Keith produced documents responsive to the subpoena on July 29, which Grassroots' counsel transmitted the same day to counsel for the Campaign and Mr. Ehr. Mr. Briggs has represented that he is continuing to search for responsive documents as of the date of this filing. Due to travel schedules and competing professional obligations, neither Mr. Keith nor Mr. Briggs is available to be deposed before the August 21 discovery cutoff. Mr. Briggs has offered availability in late August, and Mr. Keith has offered a date in early September.

On August 1, Mr. Ehr's counsel emailed undersigned counsel listing sixteen proposed Rule 30(b)(6) deposition topics and asking for deposition dates for Grassroots' current CEO and two former Grassroots employees. Though Campaign counsel has not yet issued deposition notices to

---

[3] Grassroots also served the Campaign with a First Set of Requests for Admission, a Second Set of Interrogatories, and a Third Set of Requests for Production on July 21, for which the Campaign's responses are not yet due.

5

Grassroots, or subpoenas to its former employees, undersigned counsel has begun working with these witnesses to identify available deposition dates. It is apparent from these discussions that it will not be possible to complete these depositions before the current discovery cutoff, especially since the parties still need to negotiate the scope of the Rule 30(b)(6) deposition topics. Ali Decl. ¶ 12.

### B. Mr. Ehr Has Pursued No Discovery Since He Was Served in Mid-June.

While Grassroots was attempting to pursue discovery and to engage with the Ehr Campaign to ensure that discovery moved forward efficiently, it was also attempting to perfect service of its counterclaims on Mr. Ehr, which it accomplished on June 18, 2025.[4] *See* Counterclaim-Def. Phil Ehr's Mot. to Extend Discovery Deadline at 1, ECF No. 32 ("Mot.") (acknowledging that Mr. Ehr was served on June 18); Proof of Service, ECF No. 27. Since that date, Mr. Ehr has taken no steps to pursue discovery. And while Mr. Ehr says in his motion that the reason he did not participate in discovery "*prior to service*" is that doing so could have been viewed as "waiving his jurisdictional defense," Mot. at 2 (emphasis added), that does not explain why he has made no effort to pursue discovery in the seven weeks since he was served. Regardless, Grassroots gladly would have stipulated that Mr. Ehr's participation in discovery could not be construed as a waiver of any jurisdictional defenses in order to keep the case moving forward within the existing schedule.[5]

---

[4] *See also* Grassroots Analytics, Inc.'s Mot. to Enforce Service as to Counterclaim-Def. Phil Ehr or, in the Alternative, to Reopen and Extend the Service Deadline Under Fed. R. Civ. P. 4(m), ECF No. 16; Grassroots Analytics, Inc.'s Reply in Supp. of Mot. to Enforce Service as to Counterclaim-Def. Phil Ehr, ECF No. 18.

[5] Given his critical role in the events underlying this litigation, there is little question that Mr. Ehr would be obligated to participate in discovery even if he were not a party. In other words, even if Mr. Ehr were dismissed as a counterclaim-defendant, he still would have to participate in third party discovery (including producing documents and appearing for a deposition), so there is no scenario in which he could avoid discovery altogether based on his pending motion to dismiss.

### C. This Motion.

On July 23, counsel for Mr. Ehr contacted Grassroots' counsel by email to request their position on this Motion. Attachment G to Ali Decl. at 8 (July 31, 2025 Email chain between K. Ali and D. Press). The parties exchanged a series of emails about the scope of the requested extension, which culminated with undersigned counsel stating that they were "happy to recommend to [Grassroots] that we agree to extend the deadline to complete depositions that were noticed within the existing discovery period in order to accommodate summer travel schedules, etc.," but that they could not "see any reason why we would agree to extend discovery more broadly than that." *See id.* at 4. The next day, Mr. Ehr filed this extension motion, representing that "counsel for GA refused to consent to the requested extension," while omitting that Grassroots was open to a modification of the schedule to accommodate timely noticed depositions. Mot. at 3.

## ARGUMENT

### I. There Is No Good Cause to Modify the Overall Fact Discovery Deadline.

"Under Rule 16(b), a court's 'schedule may be modified only for good cause and with the judge's consent.'" *Chandler v. Berlin*, No. 18-cv-02136 (APM), 2023 WL 9692028, at *1 (D.D.C. Sept. 5, 2023) (quoting Fed. R. Civ. P. 16(b)(4)). *See also* Local Civil Rule 16.4. "The good cause-standard requires the movant to 'show that the deadlines cannot reasonably be met despite its diligence.'" *Chandler*, 2023 WL 9692028, at *1 (quoting *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011)). *See also Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005) ("Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." (internal quotation marks and citations omitted)); 3 Moore's Federal Practice § 16.14[b] (2003)

("Good cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party"); 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1522.1 at 231 (2d ed.1990) ("Good cause" "require[s] the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."). If the party seeking to modify the schedule "is not diligent, the inquiry should end." *Dag Enters., Inc.*, 226 F.R.D. at 105 (internal quotation marks and citations omitted).

That is the situation here. Mr. Ehr does not acknowledge the operative legal standard in his motion, much less attempt to argue he has satisfied it. Nor could he: as described above, neither Mr. Ehr nor his Campaign has been diligent in pursuing discovery in this case. And throughout this litigation, Counterclaim-Defendants have shown little regard for their obligations under Rule 26 to participate in good faith in discovery, or to engage with Grassroots' counsel in a timely or professional manner. That should be the end of the Court's inquiry. *See A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 292 F.R.D. 142, 145 (D.D.C. 2013) (Brown-Jackson, J.) ("The Court's good cause inquiry must focus on defendant's reason for the delay . . . Here, defendant has not shown that it acted diligently; thus, the Court's inquiry must end.") (internal citations omitted). *See also Dag Enters., Inc.*, 226 F.R.D. at 105–06 ("Courts in this District have routinely denied requests for discovery beyond a cut-off date" based on lack of diligence); *Capitol Sprinkler Inspection, Inc.*, 630 F.3d at 226 (affirming denial of request to modify schedule based on requesting party's lack of diligence).

Even if the Court were to look past Counterclaim-Defendants' lack of diligence in prosecuting their claims and pursuing discovery, there still is no basis to extend the overall discovery cutoff, much less by 120 days. Mr. Ehr asserts without specifics that there are "issues

unique to Mr. Ehr," "the parties motivations are far different," and "the interest of the Committee and Mr. Ehr are not the same." Mot. at 1–2. But he does not state with any particularity what discovery he has not had the opportunity to take or provide, and it is difficult to imagine what that could possibly be, given the breadth of the Campaign's discovery requests and Grassroots' written responses and document productions. *See* Attachment B.[6] That conclusion is underscored by the fact that (i) the Campaign has invoked its need for Mr. Ehr's input into and participation in discovery as a basis for seeking extensions of time to respond to Grassroots' discovery requests, and (ii) Mr. Ehr's counsel represented on May 13 that the Campaign planned to produce "all documents that the campaign has – the entire email server, plus everything responsive that Phil has on paper and his personal devices. That is literally everything we have." *See* Attachment A at 6; Attachment H to Ali Decl. (Mar. 17, 2025 Email Chain Between K. Ali and D. Press). In addition, because no depositions have yet occurred, Mr. Ehr will still have the ability to question witnesses, should he choose to do so.

\* \* \*

Grassroots has no interest in hamstringing Mr. Ehr's ability to litigate this case. But "where a party fails to pursue discovery in the face of a court-ordered cutoff, as here, that party may not be heard to plead prejudice resulting from his own inaction." *Secord v. Cockburn,* 747 F.Supp. 779, 786 (D.D.C. 1990).

**II.    Good Cause Exists to Permit the Parties to Complete Depositions After the August 21 Discovery Cutoff to Accommodate Scheduling Constraints.**

Although Grassroots maintains that there is no good cause for a wholesale modification of the case schedule, Grassroots agrees that there is good cause to extend the schedule for the limited

---

[6] Although Grassroots objected to many of the Campaign's requests for production as overbroad (among other bases), Grassroots stood on very few of its objections and produced documents responsive to nearly all of these requests.

purpose of permitting the parties to complete depositions that were timely noticed during the existing discovery period but have not been able to schedule or complete before the August 21 discovery cutoff due to scheduling constraints. As noted above, Grassroots served document and deposition subpoenas on two former Ehr Campaign staffers in early July. Due to pre-planned travel and competing professional deadlines, neither of these third parties is available to be deposed before the current discovery deadline, but have offered availability in late August and early September. Grassroots also noticed Mr. Ehr's deposition in mid-July, and while the parties have not yet been able to agree on a date for that deposition, it seems likely that the earliest available date for all parties and counsel will also be in early or mid-September.

In addition, also as described above, counsel for the Campaign and Mr. Ehr recently indicated that he plans to issue a Rule 30(b)(6) deposition notice spanning sixteen topics, and to depose Grassroots' current CEO and two former Grassroots employees. Undersigned counsel is working diligently to identify available dates for all of these witnesses, but it is clear that it will not be possible to complete these depositions before the existing cutoff, especially given that the parties still need to negotiate the scope of the Rule 30(b)(6) deposition topics.

To guard against the need for the parties to return to the Court to seek any further modifications of the case schedule, Grassroots respectfully requests that the Court extend the deadline by which the parties may complete timely noticed or subpoenaed depositions to October 3 (an approximately 40-day extension).

**CONCLUSION**

For the foregoing reasons, Grassroots respectfully submits that there is no good cause to modify the fact discovery deadline for all purposes. However, Grassroots agrees that there is good cause to modify the schedule to permit the parties to complete timely noticed or subpoenaed

depositions, and respectfully requests that the Court extend that deadline to and including October 3, 2025.

DATED: August 7, 2025                                Respectfully Submitted,


                                                     By: /s/ Kathryn Ali
                                                     Kathryn Ali (D.C. Bar No. 994633)
                                                     Elizabeth Lockwood (D.C. Bar No. 1029746)
                                                     Meghan Palmer (D.C. Bar No. 1736144)
                                                     ALI & LOCKWOOD LLP
                                                     501 H Street NE, Suite 200
                                                     Washington, D.C. 20002
                                                     (202) 651-2475
                                                     katie.ali@alilockwood.com
                                                     liz.lockwood@alilockwood.com
                                                     meghan.palmer@alilockwood.com

                                                     Mark A. Lancaster (D.C. Bar No. 1620256)
                                                     General Counsel,
                                                     Grassroots Analytics, Inc.
                                                     mlancaster@grassrootsanalytics.com

                                                     *Counsel for Defendant-Counterclaimant Grassroots Analytics, Inc*