# Attachment B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PHIL EHR FOR CONGRESS CAMPAIGN COMMITTEE, <br><br> *Plaintiff,* <br><br> v. <br><br> GRASSROOTS ANALYTICS, INC., <br><br> *Defendant.* <br><br> ———————————————— <br><br> GRASSROOTS ANALYTICS, INC., <br><br> *Counterclaim-Plaintiff,* <br><br> v. <br><br> PHIL EHR FOR CONGRESS CAMPAIGN COMMITTEE; PHIL EHR FOR SENATE CAMPAIGN COMMITTEE; PHIL EHR (INDIVIDUALLY), <br><br> *Counterclaim-Defendants.* | Civil Action No. 1:24-cv-03035-APM |

**GRASSROOTS ANALYTICS, INC.'S RESPONSES AND OBJECTIONS TO FIRST SET OF INTERROGATORIES SERVED BY PHIL EHR FOR CONGRESS CAMPAIGN COMMITTEE AND PHIL EHR FOR SENATE CAMPAIGN COMMITTEE**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Grassroots Analytics, Inc., hereby responds and objects to Plaintiff's First Discovery Requests to Defendant issued by Plaintiff(s) and Counterclaim-Defendants Phil Ehr for Congress Campaign Committee and Phil Ehr for Senate Campaign Committee (together, "the Campaign") on May 16, 2025.

**GENERAL OBJECTIONS**

Grassroots Analytics makes the following General Objections to each and every Definition, Instruction, and Interrogatory, and these General Objections are hereby incorporated into

1

Grassroots Analytics' Response to each and every Interrogatory. To the extent that any General Objection is not raised in any particular Response, Grassroots Analytics does not waive that General Objection.

1.    Grassroots Analytics objects to each Definition, Instruction, and Interrogatory to the extent it is unduly burdensome, and/or intended to cause annoyance, embarrassment, undue expense, harassment, and/or oppression.

2.    Grassroots Analytics objects to each Definition, Instruction, and Interrogatory to the extent it seeks to impose obligations on Grassroots Analytics that are broader and/or more burdensome than, and/or otherwise inconsistent with, the Federal Rules of Civil Procedure, the local rules of the United States District Court for the District of Columbia, and/or any rules or standing orders issued by this Court. Unless instructed otherwise, Grassroots Analytics shall interpret each Definition, Instruction, and Interrogatory according to its ordinary and plain meaning, to the extent not inconsistent with any applicable rules.

3.    Grassroots Analytics objects to each Definition, Instruction, and Interrogatory to the extent it seeks information outside of Grassroots' possession, custody, or control.

4.    Grassroots Analytics objects to each Definition, Instruction, and Interrogatory to the extent it is vague, ambiguous, and/or otherwise incapable of reasonable ascertainment.

5.    Grassroots Analytics objects to the extent that the Definitions, Instructions, and Interrogatories seek to compel the disclosure of confidential and/or privileged material protected under, without limitation, the attorney-client privilege, work product doctrine, consulting expert or any other statutory or common law privilege, prohibition, limitation, or immunity from disclosure.

6.     Grassroots Analytics objects to each and every Definition, Instruction, and Interrogatory to the extent that it seeks proprietary or confidential business information, or trade secrets.

7.     Grassroots Analytics objects to the Definitions, Instructions, and Interrogatories to the extent that they purport to call for the disclosure of information that Grassroots Analytics is prohibited from producing or disclosing by contract, court order, statute, rule, regulation, or law.

8.     Grassroots Analytics objects to the Definitions, Instructions, and Interrogatories to the extent that they are irrelevant to the claims and counterclaims in this case and to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence. Grassroots Analytics' responses to these Interrogatories are limited to information concerning the 2024 campaign cycle.

9.     None of the objections and responses contained herein is an admission as to the truth or accuracy of any statement or characterization contained in the Definitions, Instructions, or Interrogatories, or an admission of relevance, materiality, admissibility, or existence of the discovery sought or produced. Further, no response in whole or in part to any Definition, Instruction, or Interrogatory shall be deemed to waive any applicable right, privilege, or objection.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Grassroots Analytics objects to the instructions in Definition B for responding to interrogatories that seek the name or identity of a person because they are overbroad, unduly burdensome, and impose discovery obligations beyond those set forth in the Federal or local Rules. Grassroots also objects to the extent the instructions seek information that is outside of the custody and control of Grassroots, private and personal information, and information that is equally—if not more—accessible to Plaintiff/Counter-Defendants.

3

2.    Grassroots Analytics objects to the definition of "Documents" in Definition C to the extent it includes data or other information that is not reasonably accessible, and is otherwise overly broad and unduly burdensome.

3.    Grassroots Analytics objects to the instructions in Definition C as unduly burdensome and imposing discovery obligations beyond those set forth in the federal or local rules. Grassroots Analytics also objects to these instructions to the extent that they request information that is not in its possession, custody, or control.

4.    Grassroots Analytics objects to the definition of "[i]n the possession, custody, or control" in Definition D to the extent that it includes materials and information in the possession of former employees, attorneys, affiliates, or agents that are not within Grassroots' possession, custody, or control. *See, e.g.*, *Lintz v. Am. Gen. Fin., Inc.*, No. CIV.A. 98-2213-JWL, 1999 WL 619045, at *2 (D. Kan. Aug. 2, 1999) ("Documents possessed by former employees are not necessarily in the possession, custody, or control of the prior employer.").

5.    Grassroots Analytics objects to the instructions in Definition F to the extent that they impose obligations beyond those required by the federal rules. Grassroots will abide by the requirements for claiming privilege under Federal Rule of Civil Procedure 26(b)(5)(A).

6.    Grassroots Analytics objects to the definition of the pronoun "you" and its derivatives in Definition G(9) as overly broad and unduly burdensome to the extent that these terms include attorneys in this action, and persons and/or entities having no relevance to this action and/or over which Defendant has no control. *See, e.g.*, *Wilson Land Corp. v. Smith Barney, Inc.*, No. 5:97CV519, 2000 WL 33672980, at *6 (E.D.N.C. Dec. 8, 2000) ("Interrogatories are limited to parties to the litigation and may not be directed to the attorney for a party." (citing *Hickman v. Taylor*, 329 U.S. 495, 504 (1947))). Grassroots Analytics will respond to the Interrogatories based

4

only on information known to it, and which is in its own possession, custody, or control, as required

by the Rules.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

Subject to and without waiving the foregoing General Objections and Objections to

Definitions and Instructions, each of which is incorporated by reference into the following specific

objections ("Specific Objections"), Grassroots Analytics responds to Plaintiff's Interrogatories as

follows:

## INTERROGATORY NO. 1:

Identify all persons who assisted, or provided information utilized, in the preparation of
the responses to these interrogatories, specifying for each such person the assistance and/or
information provided.

## RESPONSE TO INTERROGATORY NO. 1:

Grassroots Analytics objects to this Request to the extent it seeks information protected by

the attorney client privilege or work product doctrine. Subject to and without waiving this

objection, Grassroots Analytics states that its counsel prepared these responses and objections,

with factual input from Danny Hogenkamp, Mark Lancaster, Josh Lewis, and Joey Mamlin.

## INTERROGATORY NO. 2:

Describe in detail each and every claim you assert in your counterclaim this action and
state the factual and legal basis for each.

## RESPONSE TO INTERROGATORY NO. 2 (PART 1[1]):

Grassroots Analytics objects to Interrogatory No. 2 as compound, unduly burdensome, and

premature. Discovery is still in its early stages, documents are still being collected and produced,

no third party discovery has yet taken place, and no witnesses have been deposed at this stage.

---

[1] Grassroots Analytics objects to this interrogatory as compound, and will treat the second sentence
of it as a separate interrogatory for purposes of the numerical limit on interrogatories set by Federal
Rule of Civil Procedure 33.

Subject to and without waiving these objections, Grassroots Analytics summarizes its counterclaims in this action as follows:

1. **Breach of Contract:**

Phil Ehr for Senate (the "Campaign") entered into a Services Agreement with Grassroots Analytics on or about July 18, 2023 (the "July Services Agreement"). Pursuant to the July Services Agreement, Grassroots Analytics agreed to provide services, including conducting a text messaging program as requested and instructed by Phil Ehr for Senate; copywriting, production, and quality assurance for the texting program; and generation of an analysis of results. The July Services Agreement set forth the specific payment terms by which the Campaign agreed to compensate Grassroots Analytics for its services and out of pocket expenses, as well as a late fee provision and an attorney's fees provision. The July Services Agreement contains an "as-is" clause, which provides that the services are provided as is with all faults.

The Campaign accepted the services provided by Grassroots Analytics. Grassroots Analytics sent invoices to Counterclaim Defendants reflecting charges for services on or about July 31, 2023; August 31, 2023; and September 30, 2023. Grassroots Analytics sent invoices to Counterclaim Defendants reflecting charges for late fees on or about November 20, 2023, and December 1, 2023. The Campaign paid $254,989.83 towards the first invoice, leaving an outstanding balance of $175,443.17. The Campaign never paid this outstanding balance, and never paid any of the other invoices. Phil Ehr for Congress lists an undisputed debt and obligation owed to Grassroots Analytics on its federal campaign report.

In October 2023, Mr. Ehr terminated his campaign for Senate to run for Congress and transferred his campaign assets—including the July Services Agreement with Grassroots Analytics—to his congressional campaign. The Campaign and Mr. Ehr have a contractual and

legal obligation to pay Grassroots Analytics for the services provided under the July Services Agreement. In violation of their contractual obligations, Counterclaim Defendants have failed and refused to pay Grassroots Analytics for the services provided to them. Grassroots Analytics has satisfied, is excused from performing, or the Counterclaim Defendants have waived or are estopped from insistence upon performance of, all conditions of the Services Agreement. The Counterclaim Defendants owe Grassroots Analytics at least $346,187.24 for services provided under the July Services Agreement. Under the terms of the July Services Agreement, the Counterclaim Defendants are also obligated to pay legal fees and costs incurred by Grassroots Analytics as a result of the Counterclaim Defendants' breach of their contractual obligations.

## 2. Unjust Enrichment as an Alternative Basis of Liability:

As established by the facts laid out in the above summary of the breach of contract claim, which are incorporated into this summary of the unjust enrichment claim as well, the Counterclaim Defendants received, accepted, and benefitted from the services provided by Grassroots Analytics. Mr. Ehr authorized his campaign representative and agents to accept and spend the financial resources received from the services provided by Grassroots Analytics. The Counterclaim Defendants owe Grassroots Analytics at least $346,187.24 for services provided for the sole benefit of Mr. Ehr and his campaigns. In the event the agreements between the parties are deemed unenforceable for any reason, Grassroots Analytics is entitled to recover payments owed for services provided to the Counterclaim Defendants.

A full description of these claims and the factual and legal basis for each can be found in Grassroots Analytics' filed Answer, Affirmative Defenses, and Counterclaims, ECF No. 4 at 9–17, incorporated by reference herein.

Discovery is ongoing at this time and any further response would be premature. Grassroots Analytics reserves the right to supplement this response before the close of fact discovery.

**INTERROGATORY NO. 3 (NO. 2):**

In your response, provide a breakdown of the invoiced amounts to Plaintiff (whether paid or not), including the cost per contact or per list, along with any additional fees or service charges applied and the method of calculation of such charges.

**RESPONSE TO INTERROGATORY NO. 3[2]:**

Below is a chart detailing all invoiced amounts to the Campaign (whether paid or not) for work on the relevant 2024 campaign, including the cost per contact or per list, along with any additional fees or service charges applied.

| Invoice # | Date | Service | Amount Invoiced | Amount Paid | Amount Due | Cost per message sent (if applicable) | Notes |
|---|---|---|---|---|---|---|---|
| 9664 | 7/31/2023 | July 2023 Peer to Peer List Rental | $430,433.00 | $254,989.83 | $175,443.17 | $430,433.00 / 5,363,853 messages sent = $0.08 per message sent | |
| 9732 | 8/10/2023 | Stamp Purchase | $150,000 | $0 | $0 | n/a | Client cancelled |
| 9813 | 8/31/2023 | August Peer to Peer List Rental | $126,943.00 | $0 | $126,943.00 | $126,943.00 / 1,510,494 messages sent = $0.08 per message sent | |
| 9995 | 9/30/2023 | September Peer to Peer List Rental | $37,821.40 | $0 | $37,821.40 | $37,821.40 / 363,273 messages sent = $0.10 per message sent | |
| 10115 | 10/17/2023 | 10.17.2023 Peer to Peer List Rental | $10,000 | $10,000 | $0 | | |
| 10390 | 11/20/2023 | November 2023 – April 2024 Late Fees | $2,976.82 | $0 | $2,976.82 | | |

---

[2] As noted above, Grassroots Analytics will treat this as Interrogatory No. 3.

| 10436 | 12/01/2023 | November 2023 Late Fees | $3,002.85 | $0 | $3,002.85 | | |
| | | Total | $751,177,07 | $254,989.83 | $346,187.24 | | |

The total late fees charged on the invoices are significantly lower than what is provided for in the contract because Grassroots made good faith efforts to make it easier for the Campaign to pay. The contract establishes a 10% flat late fee on the amount due once the payment is over 15 days late. The total amount due before late fees was $340,207.57. That is calculated by adding up the amounts due on invoices #9664, 9813, and 9995. Because these payments are well over 15 days late, the total late fees owed to Grassroots under the contract would be 10% of the total amount due before late fees, or $34,020.76. However, as explained in more detail below, Grassroots only invoiced the campaign for $5,979.67 in late fees (the total of invoices #10390 and 10436).

In order to make it easier for the Campaign to pay, Grassroots created a payment plan with the Campaign wherein the Campaign would pay the outstanding balance down by making a $50,000 payment each month until the balance was 0. Rather than charging a flat 10% late fee on the full amount, Grassroots only charged late fees on the amount due each month, and charged at a rate of 10.5% (the prime rate + 2%) turned into a monthly rate by dividing it by twelve. This meant that if the Campaign paid its overdue amount by May 2024 (as provided for in the payment plan), it would only have to pay a late fee of 0.875% (which is 1/12 of 10.5%). This is much less than the 10% that was due under the contract.

The late fees for Invoice #10390 were calculated according to this payment plan. The total amount due at that point was $340,207.57 (the sum of the amount due on invoices #9664, 9813, and 9995). That number was then multiplied by 10.5% (the prime rate + 2%) and then divided by 12 to arrive at $2,976.82. (The invoice also split these fees up into based on the $50,000 per month

schedule, so that each month, late fees were only due on the $50,000 to be paid under the payment plan. In other words, only 0.875% of $50,000 or $437.50 was due in late fees each month.)

After that payment was not made, Grassroots charged additional late fees to the Campaign for the missed payment. The late fees for Invoice #10436 were calculated again by taking the total amount due, which was $343,184.39 (the sum of Invoices ##9664, 9813, 9995, and 10390), and multiplying it by 10.5% (the prime rate + 2%) and then dividing it by 12 to arrive at $3,002.85.

**INTERROGATORY NO. 4 (NO. 3):**

Describe in detail the methodology used to compile, verify, and validate the donor contact lists provided to Plaintiff, including but not limited to the data sources used, the frequency of data refresh, and any third-party vendors or tools involved.

**RESPONSE TO INTERROGATORY NO. 4 (NO. 3):**

Grassroots Analytics objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The operative contract contains an "as-is" clause, which states that the texting services are provided "on an as is basis," "with all faults." In other words, the Agreement did not require any specific methodology to compile, verify, or validate donor contact lists, the "quality" of the methodology used is immaterial, and the information sought by this Interrogatory is not relevant to the parties' breach of contract claims.

Grassroots also objects to this Interrogatory because the methodology used to compile, verify, and validate donor contact lists is confidential proprietary business information, as provided in the operative contract.

Without waiving these objections, Grassroots Analytics responds that nothing in the operative contract required Grassroots Analytics to provide donor contact lists to Plaintiff, and accordingly no donor contact lists were provided to Plaintiff in connection with the relevant 2024 campaign, so Grassroots Analytics has no information responsive to this Interrogatory.

**INTERROGATORY NO. 5 (NO. 4):**

Identify each statement, and each person who on your behalf has obtained or attempted to obtain statements from any person, regarding the facts or circumstances of this matter, and for each such statement identify the person making it or from whom it was attempted to obtain the statement, the date the statement was taken or requested, a detailed description of the contents of the statement, and the person who has custody or control of the statement.

**RESPONSE TO INTERROGATORY NO. 5 (NO. 4):**

Grassroots Analytics objects to the phrase "the facts or circumstances of this matter" and lack of defined time period as overbroad and unduly burdensome. Grassroots Analytics also objects to the term "statement" as vague and overbroad. For purposes of this response, Grassroots Analytics interprets the term "statement" to include only written witness statements that are signed or otherwise sworn. Grassroots Analytics further objects to the portion of the interrogatory that asks Grassroots Analytics to "[i]dentify each statement . . . regarding the facts or circumstances of this matter" and to provide additional information about each such statement to the extent that it seeks information that is outside Grassroots Analytics' possession, custody, and control. Grassroots further objects to this Request to the extent that it seeks information that constitutes attorney work product or that is protected by attorney-client privilege.

Subject to and without waiving those objections, Grassroots Analytics responds that it has not obtained or attempted to obtain any witness statements regarding this matter. Grassroots therefore has no information responsive to this Interrogatory.

**INTERROGATORY NO. 6 (NO. 5):**

Identify any documents which support or controvert any allegation, claim, defense, or claim for damages or other relief herein, and if they are not in the custody of a party to this action describe such documents with sufficient particularity to enable the party propounding these interrogatories to file a request or subpoena for their production.

**RESPONSE TO INTERROGATORY NO. 6 (NO. 5):**

Grassroots Analytics objects to this Interrogatory as overly burdensome and premature. Grassroots Analytics further objects this Interrogatory because it appears to expressly seek documents outside of Grassroots' possession, custody, or control. Subject to and without waiving those objections, Grassroots Analytics responds that it may use the following categories of documents to support its claims or defenses:

1. Contractual agreements among the parties, including drafts of any such agreements.

2. Documents concerning the terms of the July Services Agreement and any other agreement among the parties, including concerning the parties' negotiation and/or understanding of contractual terms.

3. Documents concerning the parties' performance of their respective contractual obligations.

4. Documents concerning any alleged violations of the parties' contractual obligations.

5. Invoices sent by Grassroots Analytics to Plaintiff/the Counter Defendants for services provided under the July Services Agreement, and written communications and other documents regarding the same.

6. Documents concerning Phil Ehr's Senatorial campaign, including the decision to end his campaign for Senate.

7. Documents concerning Phil Ehr's U.S. House of Representatives campaign.

8. Documents concerning fundraising efforts relating to Phil Ehr's campaigns for the U.S. Senate and U.S. House of Representatives.

9. Documents concerning the Campaign's compliance with FEC rules and regulations related to the outstanding unpaid invoices from Grassroots Analytics

10. The Campaign's compliance with FEC rules and regulations related to the outstanding unpaid invoices from Plaintiff.

Discovery is ongoing, and any further response would be premature. Grassroots Analytics reserves the right to supplement this response.

## INTERROGATORY NO. 7 (NO. 6):

Identify all documents which you reasonably expect to be used to support or contest any allegation in the pleadings.

## RESPONSE TO INTERROGATORY NO. 7 (NO. 6):

Grassroots Analytics objects to this Interrogatory as overly burdensome and premature. Grassroots Analytics further objects to this Interrogatory to the extent it seeks documents outside of its possession, custody, or control. Subject to and without waiving those objections, Grassroots Analytics refers Plaintiffs to its response to Interrogatory No. 6 (No. 5). Discovery is ongoing, and any further response would be premature. Grassroots Analytics reserves the right to supplement this response.

## INTERROGATORY NO. 8 (NO. 7):

Identify all demographic or behavioral fields (e.g., giving history, geographic location, issue affinity, donation frequency, average gift size) included in the donor lists delivered to Plaintiff.

## RESPONSE TO INTERROGATORY NO. 8 (NO. 7):

Grassroots Analytics objects to this Interrogatory as irrelevant. The demographic or behavioral fields included in donor contact lists have no bearing on the contract dispute at issue in this case and are not reasonably calculated to lead to the discovery of admissible evidence. Additionally, the fields included in donor contact lists are confidential proprietary business information, as provided in the operative contract.

Subject to and without waiving these objections, Grassroots Analytics responds that nothing in the operative contract required Grassroots Analytics to provide donor contact lists to Plaintiff, and accordingly no donor contact lists were provided to Plaintiff in connection with the relevant 2024 campaign, so Grassroots Analytics has no information responsive to this Interrogatory.

### INTERROGATORY NO. 9 (NO. 8):

Identify (as defined above) each person referred to in the pleadings, or who you believe may have knowledge of facts relating to the allegations, claims, defenses, and claims for damages or other relief in this action, and for each such person specify the nature of the information he or she possesses, the portion of the claim(s) or defense(s) to which such knowledge applies, and whether you expect to have such person testify at the trial of this action. Include in your response all persons referred to elsewhere in your responses to these interrogatories.

## RESPONSE TO INTERROGATORY NO. 9 (NO. 8):

As stated in its Objections to Definitions and Instructions, Grassroots objects to the instructions regarding "identify[ing]" people under Definition B. Subject to and without waiving that objection, Grassroots asserts that each Grassroots Analytics employee and former employee can be contacted through undersigned counsel.

Grassroots Analytics objects to the portion of Interrogatory No. 8 that asks whether certain witnesses are expected to testify at trial because that inquiry is premature. *See, e.g.*, *Wirtz v. B. A. C. Steel Products, Inc.,* 312 F.2d 14, 16 (4th Cir. 1962) ("Whatever may be the rights of a party to require its adversary to disclose the names of his witnesses in a pre-trial hearing which takes place in contemplation of a trial at a specified time in the near future, we do not interpret the Code as requiring in general such a disclosure at the discovery stages of litigation"); *Marens v. Carrabba's Italian Grill, Inc.,* 196 F.R.D. 35, 42 (D.Md. 2000) (interrogatory seeking the names and substance of testimony of witnesses expected to be called at trial is burdensome and premature, "as it would impose a disclosure obligation on defendants greater in scope, and earlier in time, than otherwise

required by the rules of procedure, and the local rules of this Court"). Subject to and without waiving that objection, Grassroots Analytics responds that it does not know which witnesses it expects to have testify at trial at this time. Discovery is in its early stages, no witnesses have been deposed yet, and no trial date has even been set.

Grassroots further objects to this Interrogatory to the extent that it requires identification of people referred to in pleadings other than its own Answer, Affirmative Defenses, and Counterclaims, ECF No. 4. Grassroots additionally objects to this Interrogatory to the extent that it requests information that is at least equally available to the Campaign. Subject to and without waiving the above objections, Grassroots responds by listing below each person referred to in its Answer, Affirmative Defenses, and Counterclaims, and each person who it believes may have knowledge of facts relating to the allegations, claims, defenses, and claims for damages or other relied in this action.

1. Phil Ehr

    a. Relationship to the Parties: Phil Ehr is a counterclaim defendant in this case and the candidate associated with Phil Ehr for Congress, a plaintiff and counterclaim defendant in this case.

    b. Nature of Information Possessed:

        i. July Services Agreement

        ii. Decision to end campaign for Senate and/or launch campaign for the U.S. House of Representatives.

        iii. Fundraising efforts relating to Senatorial and Congressional bids

        iv. Grassroots Analytics' performance of its obligations under July Services Agreement

     v.   Termination of agreements and relationship with Grassroots Analytics

     vi.  Invoices sent by Grassroots Analytics for services provided under the July Services Agreement, and communications regarding the same

     vii.  Campaign finance disclosures and related obligations

c.  Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

2.  Danny Hogenkamp

  a.  Relationship to the Parties: Danny Hogenkamp is the Founder and CEO of Grassroots Analytics, the Defendant and Counterclaim Plaintiff in this case.

  b.  Nature of Information Possessed:

     i.  Terms of the July Services Agreement and negotiation thereof

     ii.  Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids, and fundraising campaigns more generally

     iii.  Grassroots Analytics' performance of its obligations under July Services Agreement

     iv.  Invoices sent by Grassroots Analytics for services provided under the July Services Agreement and communications regarding same

  c.  Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

3.  David Keith

  a.  Relationship to the Parties: Grassroots Analytics' understanding is that David Keith is or has been affiliated with the Ehr campaign. The specific details of his affiliation are in the possession, custody, and control of the Ehr Campaign.

b. Nature of Information Possessed:

    i. Terms of the July Services Agreement and negotiation thereof

    ii. Phil Ehr's decision to end his campaign for Senate and/or launch his campaign for the U.S. House of Representatives

    iii. Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids

    iv. Grassroots Analytics' performance of its obligations under July Services Agreement

    v. Termination of agreements and relationship with Grassroots Analytics

    vi. Invoices sent by Grassroots Analytics for services provided under the July Services Agreement, and communications regarding the same

    vii. Campaign finance disclosures

c. Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

4. Jake Briggs

a. Relationship to the Parties: Grassroots Analytics' understanding is that Jake Briggs is or has been affiliated with the Ehr campaign. The specific details of his affiliation are in the possession, custody, and control of the Ehr Campaign.

b. Nature of Information Possessed:

    i. Phil Ehr's decision to end his campaign for Senate and/or launch his campaign for the U.S. House of Representatives.

    ii. Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids

    iii. Grassroots Analytics' performance of its obligations under July Services Agreement

        iv.   Termination of agreements and relationship with Grassroots Analytics

        v.   Invoices sent by Grassroots Analytics for services provided under the July Services Agreement, and communications regarding the same

        vi.   Campaign finance disclosures and related obligations

   c.   Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

5. David Davies

   a.   Relationship to the Parties: David Davies is a former employee of Grassroots Analytics who served as the company's Mobile Fundraising Manager during the Ehr campaign.

   b.   Nature of Information Possessed:

        i.   Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids, and fundraising campaigns more generally

        ii.   Grassroots Analytics' performance of its obligations under July Services Agreement

   c.   Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

6. Joshua Lewis

   a.   Relationship to the Parties: Joshua Lewis is the Controller for Grassroots Analytics, the Defendant and Counterclaim Plaintiff in this case.

   b.   Nature of Information Possessed:

        i.   Invoices sent by Grassroots Analytics for services provided under the July Services Agreement, and communications regarding the same

      ii.   Grassroots Analytics' invoicing and billing practices more generally

  c.   Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

7.   Aaron Parnas

  a.   Relationship to the Parties: Grassroots' Analytics' understanding is that Aaron Parnas is or has been affiliated with the Ehr campaign. The specific details of his affiliation are in the possession, custody, and control of the Ehr Campaign.

  b.   Nature of Information Possessed:

      i.   Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids, and fundraising campaigns more generally

      ii.   Grassroots Analytics' performance of its obligations under July Services Agreement

  c.   Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

8.   Claudia Shrivastava

  a.   Relationship to the Parties: Claudia Shrivastava is the former CFO of Grassroots Analytics.

  b.   Nature of Information Possessed:

      i.   Terms of the July Services Agreement

      ii.   Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids, and fundraising campaigns more generally

      iii.   Grassroots Analytics' performance of its obligations under July Services Agreement

iv. Invoices sent by Grassroots Analytics for services provided under the July Services Agreement, and communications regarding the same

c. Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

9. Obi Umunna

a. Relationship to the Parties: Grassroots Analytics' understanding is that Obi Umunna is or has been affiliated with the Ehr campaign. The specific details of his affiliation are in the possession, custody, and control of the Ehr Campaign.

b. Nature of Information Possessed:

i. Terms of the July Services Agreement

ii. Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids, and fundraising campaigns more generally

iii. Grassroots Analytics' performance of its obligations under July Services Agreement

iv. Invoices sent by Grassroots Analytics for services provided under the July Services Agreement, and communications regarding the same

c. Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

10. Diego Dew

a. Relationship to the Parties: Diego Dew is the Chief Customer Officer and former Vice President of Revenue for Grassroots Analytics.

b. Nature of Information Possessed:

      i. Terms of the July Services Agreement, and Grassroots Analytics' contracting more generally

      ii. Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids, and fundraising campaigns more generally

      iii. Grassroots Analytics' performance of its obligations under July Services Agreement

      iv. Invoices sent by Grassroots Analytics for services provided under the July Services Agreement, and communications regarding the same

c. Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

11. Katiana Pearson

    a. Relationship to the Parties: Katiana Pearson is a Senior Account Manager for Grassroots Analytics

    b. Nature of Information Possessed:

      i. Grassroots Analytics' contracts

      ii. Invoices sent by Grassroots Analytics for services provided under the July Services Agreement, and communications regarding the same

    c. Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

12. Robin Miller

    a. Relationship to the Parties: Robin Miller is the Chief Innovation Officer for Grassroots Analytics.

    b. Nature of Information Possessed:

      i.  Fundraising campaigns as a general matter

      ii.  Grassroots Analytics' contracts as a general matter

      iii.  Invoicing

  c.  Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

13. Andrew Donohue:

  a.  Relationship to the Parties: Former member of Grassroots Analytics' Peer to Peer team.

  b.  Nature of Information Possessed:

      i.  Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids, and fundraising campaigns more generally

      ii.  Grassroots Analytics' performance of its obligations under July Services Agreement

  c.  Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

14. Trent Schact

  a.  Relationship to the Parties: Grassroots Analytics' understanding is that Trent Schact is or has been affiliated with the Ehr campaign. The specific details of his affiliation are in the possession, custody, and control of the Ehr Campaign

  b.  Nature of Information Possessed:

      i.  Terms of the July Services Agreement

      ii.  Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids, and fundraising campaigns more generally

      iii. Grassroots Analytics' performance of its obligations under July Services Agreement

      iv. Invoices sent by Grassroots Analytics for services provided under the July Services Agreement, and communications regarding the same

  c. Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

15. Vanessa Brito

  a. Relationship to the Parties: Grassroots Analytics' understanding is that Vanessa Brito is or has been affiliated with the Ehr campaign. The specific details of her affiliation are in the possession, custody, and control of the Ehr Campaign.

  b. Nature of Information Possessed:

      i. Terms of the July Services Agreement

      ii. Fundraising efforts relating to Phil Ehr's Senatorial and Congressional bids, and fundraising campaigns more generally

      iii. Grassroots Analytics' performance of its obligations under July Services Agreement

      iv. Invoices sent by Grassroots Analytics for services provided under the July Services Agreement, and communications regarding the same

  c. Portion of Claims or Defenses to Which Knowledge Applies: all claims and defenses

Grassroots reserves the right to supplement this response.

## INTERROGATORY NO. 10 (NO. 9):

Describe in detail all communications between you and any other party to this action, or any other person, regarding the subject matter of this action.

**RESPONSE TO INTERROGATORY NO. 10 (NO. 9):**

Grassroots Analytics objects to this Interrogatory as overbroad and unduly burdensome. Grassroots Analytics objects to the terms "all communications," "any other person," and "the subject matter of this action" as overly broad. Grassroots Analytics further objects to this Interrogatory as overbroad and unduly burdensome because it lacks any temporal limitation. Grassroots Analytics further objects to this Interrogatory to the extent it seeks production of information covered by the attorney-client privilege or work product doctrine.

Grassroots Analytics will interpret this Interrogatory as being limited to written communications with "any other party to this action." Grassroots Analytics further objects to this Interrogatory—as limited—because the only "other part[ies] to this action" are Phil Ehr and Phil Ehr for Congress. Therefore, any communications with other parties to this action are already known to and equally available to the Plaintiff. Subject to and without waiving these objections, Grassroots Analytics directs Plaintiff to documents produced in response to Request for Production No. 9.

**INTERROGATORY NO. 11 (NO. 10):**

Identify each document or other communication otherwise responsive to any interrogatory or request for production for which you claim privilege; state the nature of the privilege; the nature of the document or communication; the date thereof; the subject matter thereof; and person(s) who made the communication or wrote the document; and all recipients thereof.

**RESPONSE TO INTERROGATORY NO. 11 (NO. 10):**

Grassroots Analytics objects to this Interrogatory to the extent that it imposes obligations beyond those required by the federal rules. Grassroots will abide by the requirements for claiming privilege under Federal Rule of Civil Procedure 26(b)(5)(A).

**INTERROGATORY NO. 12 (NO. 11):**

State who at Grassroots Analytics was responsible for determining the segmentation and

targeting criteria for the donor lists purchased by Plaintiff, and on what basis these criteria were selected.

## RESPONSE TO INTERROGATORY NO. 12 (NO. 11):

Grassroots objects to this Interrogatory because it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The operative contract contains an "as-is" clause, which states that the texting services are provided "on an as is basis," "with all faults." Therefore, the basis for selection of the segmentation and targeting criteria for the donor lists rented by Plaintiff and the people responsible for determining these criteria are not relevant to the parties' breach of contract claims. The July Services Agreement did not require any specific criteria and the quality of the criteria used is immaterial.

Grassroots also objects to the portion of this Interrogatory that asks about the basis on which the segmentation and targeting criteria were selected, as that information is confidential and proprietary business information, as provided in the July Services Agreement. Subject to and without waiving that objection, Grassroots responds that the people at Grassroots Analytics responsible for determining the segmentation and targeting criteria for the donor lists rented by Plaintiff for the relevant 2024 campaign were Andrew Donohue and David Davies.

## INTERROGATORY NO. 13 (NO. 12):

Identify and explain all donations associated with the donor lists provided to Plaintiff that were later refunded or contested, including the total amount refunded, the number of donors involved, and the stated reason for each refund.

## RESPONSE TO INTERROGATORY NO. 13 (NO. 12):

Grassroots Analytics objects to this Interrogatory as unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. The amount, number, and reasons for refunded or contested donations are not relevant to these breach of contract claims. The operative contract contains an "as-is" clause, which states that the texting services are

provided "on an as is basis," "with all faults." Therefore, donations that may have been refunded or contested are immaterial. The Agreement did not require any number of donations nor guarantee against refunded or contested donations.

Grassroots also objects because this information is at least as accessible to the Plaintiff as it is to Grassroots Analytics, as it is either in the Campaign's custody and control or otherwise publicly available. Refunds and contested donations are processed through a separate entity and the only information Grassroots Analytics would have about refunded or contested donations would have come secondhand *from the Campaign*.

## INTERROGATORY NO. 14 (NO. 13):

Describe any internal evaluation or performance review regarding the effectiveness or accuracy of the donor lists used or provided by Defendant, including but not limited to those delivered to Plaintiff.

## RESPONSE TO INTERROGATORY NO. 14 (NO. 13):

Grassroots objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The operative contract contains an "as-is" clause, which states that the texting services are provided "on an as is basis," "with all faults." Therefore, evaluations and reviews regarding the accuracy of the donor lists are not relevant to the parties' breach of contract claims. The July Services Agreement did not require any evaluation or review and the quality of the donor lists and the evaluation process for the lists is immaterial.

Grassroots Analytics further objects to this Interrogatory as unduly burdensome. Evaluations and performance reviews regarding the effectiveness or accuracy of the donor lists used by Grassroots Analytics are confidential proprietary business information, as provided in the Agreement signed by both parties.

Dated: June 16, 2025                    Respectfully submitted,


                                        By: */s/ Kathryn Ali*_____
                                            Kathryn Ali (D.C. Bar No. 994633)
                                            Elizabeth Lockwood (D.C. Bar No. 1029746)
                                            Meghan Palmer (D.C. Bar No. 1736144)
                                            Ali & Lockwood LLP
                                            501 H Street NE, Suite 200
                                            Washington, D.C. 20002
                                            (202) 651-2475
                                            katie.ali@alilockwood.com
                                            liz.lockwood@alilockwood.com
                                            meghan.palmer@alilockwood.com

                                            Mark A. Lancaster (D.C. Bar No. 1620256)
                                            General Counsel
                                            Grassroots Analytics, Inc.
                                            mlancaster@grassrootsanalytics.com

                                            *Counsel for Defendant-Counterclaimant*
                                            *Grassroots Analytics, Inc.*

## **VERIFICATION**

I, Danny Hogenkamp, have reviewed the foregoing Responses and Objections to Plaintiff's First Discovery Requests to Defendant and hereby state that the answers are based on information obtained from documents, books and records; on information communicated by other persons; and, where applicable, on personal knowledge; and that I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 16, 2025                        By:_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PHIL EHR FOR CONGRESS
CAMPAIGN COMMITTEE,

     *Plaintiff*,

  v.

GRASSROOTS ANALYTICS, INC.,

     *Defendant*.

_____

GRASSROOTS ANALYTICS, INC.,

     *Counterclaim-Plaintiff*,

  v.

PHIL EHR FOR CONGRESS CAMPAIGN
COMMITTEE; PHIL EHR FOR SENATE
CAMPAIGN COMMITTEE; PHIL EHR
(INDIVIDUALLY),

     *Counterclaim-Defendants*.

Civil Action No. 1:24-cv-03035-APM

**GRASSROOTS ANALYTICS, INC.'S RESPONSES AND OBJECTIONS TO FIRST SET
OF REQUESTS FOR PRODUCTION SERVED BY PHIL EHR FOR CONGRESS
CAMPAIGN COMMITTEE AND PHIL EHR FOR SENATE
<u>CAMPAIGN COMMITTEE</u>**

    Pursuant to Federal Rules of Civil Procedure 26 and 34, Grassroots Analytics, Inc., hereby

responds and objects to Plaintiff's First Discovery Requests to Defendant issued by Plaintiff(s)

and Counterclaim-Defendants Phil Ehr for Congress Campaign Committee and Phil Ehr for Senate

Campaign Committee (together, "the Campaign") on May 16, 2025.

1

## GENERAL OBJECTIONS

Grassroots Analytics makes the following General Objections to each and every Definition, Instruction, and Request, and these General Objections are hereby incorporated into Grassroots Analytics' Response to each and every Request. To the extent that any General Objection is not raised in any particular Response, Grassroots Analytics does not waive that General Objection.

1.      Grassroots Analytics objects to each Definition, Instruction, and Request to the extent it is unduly burdensome, and/or intended to cause annoyance, embarrassment, undue expense, harassment, and/or oppression.

2.      Grassroots Analytics objects to each Definition, Instruction, and Request to the extent it seeks to impose obligations on Grassroots that are broader and/or more burdensome than, and/or otherwise inconsistent with, the Federal Rules of Civil Procedure, the local rules of the United States District Court for the District of Columbia, and/or any rules or standing orders issued by this Court. Unless instructed otherwise, Grassroots shall interpret each Definition, Instruction, and Request according to its ordinary and plain meaning, to the extent not inconsistent with any applicable rules.

3.      Grassroots Analytics objects to each Definition, Instruction, and Request to the extent it seeks documents and/or information outside of Grassroots' possession, custody, or control.

4.      Grassroots Analytics objects to each and every Request to the extent that it seeks to have Grassroots produce information in a manner other than the manner in which such information is kept in the ordinary course of business.

5.      Grassroots Analytics objects to each and every Request to the extent it seeks information from sources that are not reasonably accessible because of undue burden or cost.

2

6.      Grassroots Analytics objects to each Definition, Instruction, and Request to the extent it is vague, ambiguous, and/or otherwise incapable of reasonable ascertainment.

7.      Grassroots Analytics objects to the extent that the Requests seek to compel the disclosure of confidential and/or privileged material protected under, without limitation, the attorney-client privilege, work product doctrine, consulting expert or any other statutory or common law privilege, prohibition, limitation, or immunity from disclosure.

8.      Grassroots Analytics objects to each and every Request to the extent that it seeks proprietary or confidential business information, or trade secrets.

9.      Grassroots Analytics objects to the Requests to the extent that they purport to call for the disclosure of information that Grassroots is prohibited from producing or disclosing by contract, court order, statute, rule, regulation, or law.

10.     Grassroots Analytics objects to the Requests to the extent that they are irrelevant to the claims and counterclaims in this case and to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence.

11.     None of the objections and responses contained herein is an admission as to the truth or accuracy of any statement or characterization contained in the Requests, or an admission of relevance, materiality, admissibility, or existence of the discovery sought or produced. Further, no response in whole or in part to any Definition, Instruction, or Request shall be deemed to waive any applicable right, privilege, or objection.

12.     Grassroots Analytics' responses to these Requests are limited to information relevant to the 2024 campaign cycle.

## <u>OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS</u>

1.      Grassroots Analytics objects to the instructions for production of the documents responsive to these Requests. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), Grassroots

Analytics will not produce the requested documents in person in McLean for inspection, and will instead produce electronic copies of documents and electronically stored information.

2.    Grassroots objects to the definition of "Documents" in Definition C to the extent it includes data or other information that is not reasonably accessible, and is otherwise overly broad and unduly burdensome.

3.    Grassroots Analytics objects to the definition of "[i]n the possession, custody, or control" in Definition D to the extent that it includes materials and information in the possession of former employees, attorneys, affiliates, or agents that are not within Grassroots' possession, custody, or control. *See, e.g.*, *Lintz v. Am. Gen. Fin., Inc.*, No. CIV.A. 98-2213-JWL, 1999 WL 619045, at *2 (D. Kan. Aug. 2, 1999) ("Documents possessed by former employees are not necessarily in the possession, custody, or control of the prior employer.").

4.    Grassroots Analytics objects to Instruction F to the extent that it imposes obligations beyond those required by the federal rules. Grassroots will abide by the requirements for claiming privilege under Federal Rule of Civil Procedure 26(b)(5)(A).

5.    Grassroots Analytics objects to the definition of the pronoun "you" and its derivatives in Definition G(9) as overly broad and unduly burdensome to the extent that these terms include persons and/or entities having no relevance to this action and/or over which Defendant has no control.

## SPECIFIC OBJECTIONS TO DOCUMENT REQUESTS

Subject to and without waiving the foregoing General Objections and Objections to Definitions and Instructions, each of which is incorporated by reference into the following specific objections ("Specific Objections"), Grassroots responds to Plaintiff's Requests as follows:

**REQUEST NO. 1:**

All documents upon which you relied in preparing your pleadings.

**RESPONSE TO REQUEST NO. 1:**

Grassroots objects to this request to the extent that it includes documents that are at least equally available to the Plaintiffs. Subject to and without waiving the foregoing objection, Grassroots will produce relevant, nonprivileged documents in its possession, custody, or control responsive to this Request.

**REQUEST NO. 2:**

All documents upon which you intend to rely in the trial of this matter.

**RESPONSE TO REQUEST NO. 2:**

Grassroots objects to Request No. 2 as unduly burdensome and premature. Discovery is still ongoing at this time, and Grassroots does not have an obligation to produce these documents until its pretrial statement is due, *see* D.D.C. Local R. 16.5; *see also Norris v. Fotomat Corp., Inc.*, Civ. No. 86-3624, 1987 WL 5202, slip op. at 1 (E.D. Pa. January 05, 1987) (interrogatories that "request documents . . . which the defendant plans to use at trial and documents the defendant intends to introduce at trial" are "premature" (citing *Robbins v. Camden City Board of Education*, 105 F.R.D. 49, 58 (D.N.J. 1985))); *Uinta Oil Refining Co. v. Continental Oil Co.*, 226 F. Supp. 495, 501–502 (D. Utah 1964) (interrogatories seeking evidence which the other party intends to use at trial . . . are objectionable as being premature).

5

**REQUEST NO. 3:**

All documents identified in response to the Interrogatories or referred to or utilized in preparing your responses thereto.

**RESPONSE TO REQUEST NO. 3:**

Grassroots objects to this Request to the extent that it seeks information that constitutes attorney work product or that is protected by attorney-client privilege.

Subject to and without waiving the foregoing objections, Grassroots will produce relevant, nonprivileged documents in its possession, custody, or control responsive to this Request.

**REQUEST NO. 4:**

Any and all statements relevant to the facts and/or events alleged in the pleadings given, authored or signed by any person having knowledge of such facts and/or events.

**RESPONSE TO REQUEST NO. 4:**

Grassroots Analytics objects to Request No. 4 as overbroad and unduly burdensome, particularly with respect to the phrase "the facts and/or events alleged in the pleadings," which could include information irrelevant to this breach of contract action. Grassroots also objects to the extent that this Request includes documents that are outside its possession, custody, or control, and documents that are at least equally available to the Plaintiffs. Grassroots further objects to this Request to the extent that it seeks information that constitutes attorney work product or that is protected by attorney-client privilege.

Grassroots further objects because the term "statements" is vague and overbroad. For purposes of this response, Grassroots construes the term to include only written witness statements that are signed or otherwise sworn. Subject to and without waiving these objections, Grassroots responds that it has no documents responsive to this Request.

**REQUEST NO. 5:**

Any and all documents supporting or in any way relating to any and all claims and defenses asserted in the above-captioned matter.

**RESPONSE TO REQUEST NO. 5:**

Grassroots Analytics objects to Request No. 5 because it does not identify the items to be produced and describe them with reasonable particularity, as required by Federal Rule of Civil Procedure 34(b). *See Johnson Controls, Inc. v. A.M. Goodson Co.*, No. SA-04-CA-473-FB, 2006 WL 8434148, at *4 (W.D. Tex. Apr. 13, 2006) ("catch all" requests are not permitted under the federal rules); *Schall v. Nodak Ins. Co.*, No. 8:22CV317, 2024 WL 2355714, at *6 (D. Neb. May 23, 2024), *objections overruled*, No. 8:22CV317, 2025 WL 50144 (D. Neb. Jan. 8, 2025). This "catch all" request is overbroad, unduly burdensome, and disproportionate to the needs of this case. *See, e.g.*, *Wagner Equip. Co. v. Wood*, No. 11-466, 2012 WL 12862336, at *13 (D.N.M. Nov. 21, 2012) (finding that a similar discovery request was "overly broad and place[d] an undue burden on Plaintiff given its 'catch-all' nature"); *Schall*, 2024 WL 2355714, at *6 (finding a "catch all" discovery request impermissible because it was "vague and overbroad"); *Gonzales v. Goodyear Tire & Rubber Co.*, No. CV 05-941, 2006 WL 8443759, at *21 (D.N.M. Aug. 18, 2006) (finding that a party need not produce anything in response to a Request in which "the general information sought is not necessarily irrelevant, but the Request is overly broad and is an unnecessary catch-all Request, covering information dealt with in other, more focused discovery requests").

Grassroots also objects to this Request because the terms "supporting" and "in any way relating" are ambiguous and vague. *See F.D.I.C. v. Wachovia Ins. Servs., Inc.*, 241 F.R.D. 104, 109 (D. Conn. 2007) (noting that "catch all requests" are "disfavor[ed]" and "virtually impossible to comply with" because "[a]ny good attorney can, in hindsight, always argue that a document, the

identity and contents of which are later discovered but that was never disclosed, is somehow 'related' to a 'claim' involved in the case."); *Schall*, 2024 WL 2355714, at *6. "It is up to the requesting party to construe the claims in the case and more precisely request information that may be relevant." *Wachovia Ins. Servs., Inc.*, 241 F.R.D. at 109.

Grassroots further objects to this request to the extent that it includes documents that (1) are outside of its possession, custody, or control, (2) are at least equally available to the Plaintiffs, (3) are protected by attorney-client privilege, the attorney work product doctrine, or any other immunity or privilege, (4) include trade secrets, proprietary information, or confidential business information, (5) are not relevant, or (6) are not reasonably calculated to lead to admissible evidence in this action.

Subject to and without waiving those objections, Grassroots responds that it is willing to meet and confer about the scope of this request.

## REQUEST NO. 6:

The resume or curriculum vitae of, and any written report regarding the subject matter of this action prepared by, each and every person you expect to call as an expert witness at the trial of the above-captioned action, and any and all communications pertaining in any way to this litigation between any party to this litigation, their attorneys, or any other person and any such expert.

## RESPONSE TO REQUEST NO. 6:

Grassroots Analytics objects to Request No. 6 as premature. The parties' Rule 26(f) and Local Rule 16.3 report provides—in response to the question of whether to modify the requirement of exchange of expert witness reports and information under Federal Rule of Civil Procedure 26(a)(2):

The parties have not yet determined whether expert witnesses will be necessary in this case. The parties propose that, if necessary, expert discovery should occur as follows: (1) expert reports due 30 days after the close of fact discovery; (2) rebuttal expert reports due 30 days after receipt of the initial expert report; and (3) all depositions of expert witnesses must occur within 15 days of receipt of any rebuttal

expert reports. In all instances, expert discovery—including depositions—shall conclude within 75 days from the close of fact discovery.

ECF 10.

The court's scheduling order sets a deadline of August 25, 2025, for the parties to file a joint status report "advising whether fact discovery is complete and whether the parties will require a period of expert discovery." ECF 11.

At this time, fact discovery is still ongoing. Grassroots will disclose any experts and expert reports in accordance with the schedule set by the court for expert discovery (which has not yet been established), and with Federal Rule of Civil Procedure 26(a)(2).

**REQUEST NO. 7:**

Any expert reports and/or testimony provided at any time in any matter during the last ten years by each and every person you expect to call as an expert witness at the trial of the above-captioned action.

**RESPONSE TO REQUEST NO. 7:**

Grassroots Analytics objects to Request No. 7 as premature and incorporates its arguments from its response to Request No. 6 into this Response.

**REQUEST NO. 8:**

Any publications (including books, articles, pamphlets, videotapes or other electronic form of publishing) authored, edited, or otherwise adopted by each and every person you expect to call as an expert witness at the trial of the above-captioned action.

**RESPONSE TO REQUEST NO. 8:**

Grassroots Analytics objects to Request No. 8 as premature and incorporates its arguments from its response to Request No. 6 into this Response.

**REQUEST NO. 9:**

Any and all correspondence or other communications between you and Plaintiff and/or Phil Eht [sic], including agents or attorneys for either.

9

**RESPONSE TO REQUEST NO. 9:**

Grassroots Analytics objects to Request No. 9 as overbroad and unduly burdensome, particularly as it contains no limitations on scope with respect to either subject matter or time period. Grassroots also objects because these documents are equally available to the Plaintiff. Subject to and without waiving those objections, Grassroots responds that it is willing to meet and confer about the scope of this request.

**REQUEST NO. 10:**

All documents and communications describing the methodology, data sourcing, and verification procedures used to generate the donor lists sold to Phil Ehr for Congress.

**RESPONSE TO REQUEST NO. 10:**

Grassroots Analytics objects to Request No. 10 as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The operative contract contains an "as-is" clause, which states that the texting services are provided "on an as is basis," "with all faults." Therefore, the methodology data sourcing, and verification procedures used to generate the donor lists rented to the Campaign are not relevant to the parties' breach of contract claims. The July Services Agreement did not require any specific methodology, data sourcing, or verification, and the quality of the methodology, data sourcing, and verification used is therefore immaterial.

Grassroots further objects to this Request because the methodology, data sourcing, and verification procedures used to generate the donor lists used to compile, verify, and validate donor contact lists is confidential proprietary business information, as provided in the operative contract. Grassroots Analytics stands on this objection.

**REQUEST NO. 11:**

Any statement concerning this action or its subject matter made by Plaintiff and/or Phil Ehr.

**RESPONSE TO REQUEST NO. 11:**

Grassroots objects to Request No. 11 because any responsive documents are equally, if not more, available to Plaintiff. Grassroots also objects to the extent that the responsive documents are not in its possession, custody, or control. Grassroots objects to the term "statements" as vague and ambiguous. Subject to and without waiving those objections, Grassroots agrees to produce non-privileged documents responsive to this Request in its possession, custody, and control, if any.

**REQUEST NO. 12:**

Any statement concerning this action or its subject matter made by you.

**RESPONSE TO REQUEST NO. 12:**

As stated in its Objections to Definitions and Instructions, Grassroots objects to Request No. 12 insofar as the definition of the term "you" includes the attorneys in this action and others having no relevance to this action and/or over which Defendant has no control. Grassroots will interpret "you" to mean only Grassroots Analytics.

Further, Grassroots objects to this request to the extent that any of the requested statements constitute attorney work product or are covered by attorney-client privilege.

Grassroots also objects to this request as overbroad and unduly burdensome, and because the term "statements" and "this action or its subject matter" are vague and overbroad, and could include information that is entirely irrelevant to this breach of contract action. Subject to and without waiving those objections, Grassroots responds that it is willing to meet and confer concerning the scope of this Request.

**REQUEST NO. 13:**

All documents related in any way to Plaintiff or Phil Ehr.

11

**RESPONSE TO REQUEST NO. 13:**

Grassroots Analytics objects to Request No. 13 because it does not identify the items to be produced and describe them with reasonable particularity, as required by Federal Rule of Civil Procedure 34(b). *See Johnson Controls, Inc. v. A.M. Goodson Co.*, No. SA-04-CA-473, 2006 WL 8434148, at *4 (W.D. Tex. Apr. 13, 2006) ("catch all" requests are not permitted under the federal rules); *Schall v. Nodak Ins. Co.*, No. 8:22CV317, 2024 WL 2355714, at *6 (D. Neb. May 23, 2024), *objections overruled*, No. 8:22CV317, 2025 WL 50144 (D. Neb. Jan. 8, 2025). This "catch all" request is overbroad, unduly burdensome, and disproportionate to the needs of this case. *See, e.g.*, *Wagner Equip. Co. v. Wood*, No. 11-466, 2012 WL 12862336, at *13 (D.N.M. Nov. 21, 2012) (finding that a similar discovery request was "overly broad and place[d] an undue burden on Plaintiff given its 'catch-all' nature"); *Schall*, 2024 WL 2355714, at *6 (finding a "catch all" discovery request impermissible because it was "vague and overbroad"); *Gonzales v. Goodyear Tire & Rubber Co.*, No. CV 05-941, 2006 WL 8443759, at *21 (D.N.M. Aug. 18, 2006) (finding that a party need not produce anything in response to a Request in which "the general information sought is not necessarily irrelevant, but the Request is overly broad and is an unnecessary catch-all Request, covering information dealt with in other, more focused discovery requests"). Grassroots Analytics further objects to the Request as overbroad and unduly burdensome, particularly as it contains no limitations on scope with respect to either subject matter or time period.

Grassroots further objects to this request to the extent that the request includes documents that (1) are outside of its possession, custody, or control, (2) are at least equally available to the Plaintiffs, (3) are protected by attorney-client privilege, the attorney work product doctrine, or any other immunity or privilege, (4) include trade secrets, proprietary information, or confidential

business information, (5) are not relevant, or (6) are not reasonably calculated to lead to admissible evidence in this action.

Subject to and without waiving the foregoing objections Grassroots responds that it is willing to meet and confer about the scope of this request.

**REQUEST NO. 14:**

Each list delivered to Phil Ehr for Congress, showing the included data fields, metadata, and acquisition timestamp.

**RESPONSE TO REQUEST NO. 14:**

Grassroots Analytics objects to Request No. 14 because it is irrelevant and not reasonably calculated to lead to discovery of admissible evidence. The operative contract contains an "as-is" clause, which states that the texting services are provided "on an as is basis," "with all faults." Therefore, the data fields, metadata, and acquisition timestamps of the donor lists are not relevant to the parties' breach of contract claims. Grassroots also objects on the grounds that these documents are equally, if not more, accessible to Plaintiff and to the extent that the requested documents contain confidential proprietary business information, as provided in the operative contract. Subject to and without waiving those objections, Grassroots responds that nothing in the operative contract required Grassroots Analytics to provide lists to Plaintiff, and accordingly no lists were delivered to Plaintiff in connection with the relevant 2024 campaign, so Grassroots Analytics has no information responsive to this Request.

**REQUEST NO. 15:**

All internal or external communications discussing the customization or curation of lists for Plaintiff, including any intake forms, client request documents, or meeting notes.

**RESPONSE TO REQUEST NO. 15:**

Grassroots objects to Request No. 15 as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The operative contract contains an "as-is" clause, which

states that the texting services are provided "on an as is basis," "with all faults." Therefore, discussions of the customization or curation related to the lists for the Plaintiffs are not relevant to the parties' breach of contract claims. The Agreement did not require any specific type of customization or curation, and the quality of the donor lists is immaterial. Grassroots also objects to this Request to the extent these documents contain confidential proprietary business information, as provided in the operative contract. Grassroots stands on these objections.

**REQUEST NO. 16:**

Any documents showing the basis for calculating your invoices to Plaintiff.

**RESPONSE TO REQUEST NO. 16:**

Grassroots will produce relevant, nonprivileged documents in its possession, custody, or control sufficient to show the basis for calculating its invoices to Plaintiff for its work during the relevant 2024 campaign.

**REQUEST NO. 17:**

All documents produced in response to any subpoena to any third party, and all correspondence related to any such subpoenas.

**RESPONSE TO REQUEST NO. 17:**

Grassroots Analytics objects to Request No. 17 because it is overbroad and imposes greater obligations than the federal rules. Pursuant to Federal Rule of Civil Procedure 45(a)(4), Grassroots will notify Plaintiffs before service of any subpoena that commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial.

Subject to and without waiving this objection, Grassroots Analytics responds that it does not have any documents responsive to this request at this time.

**REQUEST NO. 18:**

All invoices, billing statements, and receipts issued to Plaintiff.

**RESPONSE TO REQUEST NO. 18:**

Grassroots objects to Request No. 18 because any responsive documents are equally if not more accessible to the Plaintiff. Without waiving this objection, Grassroots will produce relevant, nonprivileged documents pertaining to the 2024 campaign in its possession, custody, or control responsive to this Request.

**REQUEST NO. 19:**

All documents showing or related to how the cost per contact or list, or any other amounts charged to Plaintiff, were calculated.

**RESPONSE TO REQUEST NO. 19:**

Grassroots Analytics objects to Request No. 19 as irrelevant and not reasonably calculated to lead to admissible evidence. Plaintiff agreed in the operative contract to a cost per contact rate between $0.15 and $0.25. The cost per contact rate that Grassroots Analytics billed the Campaign on each invoice was *lower* than that contractually agreed upon amount. The calculations for those costs are therefore not relevant to these breach of contract claims.

Subject to and without waiving the foregoing objections, Grassroots will produce documents sufficient to show how the late fees charged to Plaintiff were calculated.

**REQUEST NO. 20:**

All internal and external communications, customer service logs, and donor correspondence related to refunded or disputed donations linked to contacts from the lists sold to Plaintiff.

**RESPONSE TO REQUEST NO. 20:**

Grassroots Analytics objects to Request No. 20 as irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Refunded or disputed donations are not relevant to these breach of contract claims. The operative contract contains an "as-is" clause, which states that the texting services are provided "on an as is basis," "with all faults." Therefore, donations

that were refunded or disputed are immaterial. The Agreement did not include any guarantees against refunded or contested donations.

Grassroots also objects to the extent that this Request seeks documents that are outside its possession, custody, and control or are at least as accessible to the Plaintiff as to Grassroots Analytics.

Subject to and without waiving that objection, Grassroots responds that it has no documents responsive to this Request.

**REQUEST NO. 21:**

All documents reflecting or relating to any assessment, report, or audit related to the performance or complaints tied to the lists sold to Plaintiff.

**RESPONSE TO REQUEST NO. 21:**

Grassroots objects to Request No. 21 as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The operative contract contains an "as-is" clause, which states that the texting services are provided "on an as is basis," "with all faults." Therefore, assessments, audits, and complaints related to the lists rented to the Plaintiffs are not relevant to the parties' breach of contract claims. The Agreement did not require any assessment, report, or audit and the quality of the donor lists and the audit process for the lists is immaterial.

Grassroots Analytics further objects to this request because evaluations and performance reviews regarding the effectiveness or accuracy of the donor lists used by Grassroots Analytics are confidential proprietary business information, as provided in the operative contract. Grassroots Analytics stands on these objections.

**REQUEST NO. 22:**

All documents reflecting or relating to any assessment, report, or audit related to the performance or complaints tied to the lists sold to, provided to, or used by other clients/customers of Defendant.

**RESPONSE TO REQUEST NO. 22:**

Grassroots Analytics objects to Request No. 22 as irrelevant, not reasonably calculated to lead to admissible evidence, and overbroad. The operative contract contains an "as-is" clause, which states that the texting services are provided "on an as is basis," "with all faults," and Grassroots' dealings with other clients have no bearing on whether or not it performed adequately on the contract at hand. Grassroots also objects to the extent this Request seeks documents containing confidential proprietary business information, as provided in the operative contract. Grassroots Analytics stands on these objections.

Dated: June 16, 2025                              Respectfully submitted,


                                         By: */s/ Kathryn Ali*
                                              Kathryn Ali (D.C. Bar No. 994633)
                                              Elizabeth Lockwood (D.C. Bar No. 1029746)
                                              Meghan Palmer (D.C. Bar No. 1736144)
                                              Ali & Lockwood LLP
                                              501 H Street NE, Suite 200
                                              Washington, D.C. 20002
                                              (202) 651-2475
                                              katie.ali@alilockwood.com
                                              liz.lockwood@alilockwood.com
                                              meghan.palmer@alilockwood.com

                                              Mark A. Lancaster (D.C. Bar No. 1620256)
                                              General Counsel
                                              Grassroots Analytics, Inc.
                                              mlancaster@grassrootsanalytics.com

                                              *Counsel for Defendant-Counterclaimant*
                                              *Grassroots Analytics, Inc.*