UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**PHIL EHR FOR CONGRESS CAMPAIGN COMMITTEE,**
        Plaintiff,

v.

**GRASSROOTS ANALYTICS, INC.,**
        Defendant.

Civil Action No.: 1:24-cv-03035-APM

-

**COUNTERCLAIM-DEFENDANT PHIL EHR'S REPLY MEMORANDUM RE MOTION TO DISMISS**

Counterclaim Defendant Phil Ehr submits this Reply Memorandum in support of his Motion to Dismiss for Lack of Personal Jurisdiction.

In its response, Grassroots Analytics ("GA") does not in any way refute that Mr. Ehr lacks the minimum contacts with the District of Columbia to be haled into court here. Yet it asserts that this does not matter because a forum selection clause in a contract to which he was not a party was enough to overcome that.

GA relies on *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 60 F. Supp. 3d 21, 26–27 (D.D.C. 2014) for the proposition that "[W]here the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." But the facts here do not support such a close relationship.

1

First, while *Sabre* did bring non-signatories in where personal jurisdiction was otherwise lacking, Mr. Ehr maintains that a constitutional due process right cannot not so easily be waived by a third party. In *Naegele v. Albers*, 355 F. Supp. 2d 129, 138-39 (D.D.C. 2005), the Court rejected the same arguments made in *Sabre* and here that the forum selection clause prevails over constitutional due process concerns. *Sabre* is wrongly decided.

Further, GA's other cases do not support their position here that Mr. Ehr should be bound by the Committee's consent to jurisdiction. *Song Fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53 (D.D.C. 2014) involved plaintiffs suing based on YouTube's Terms of Service, where their claims arose out of that service to which one of them agreed. It has nothing to do with bringing a new party in as a defendant based on a forum selection clause to which he never agreed. And *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513–15, 514 n.5 (9th Cir. 1988) and *Marra v. Papandreou*, 59 F. Supp. 2d 65, 77 (D.D.C. 1999) involved Defendants enforcing the forum selection clause to dismiss a case, not being bound by it to create personal jurisdiction when none exists. These do not raise due process implications.

Furthermore, even if *Sabre* is good law, its standards are not met here. The close relationship required by *Sabre* does not exist.

The following facts are as set forth in Mr. Ehr's Affidavit, filed herewith. Mr. Ehr did not sign the contract at issue. While, on behalf of the Campaign Committee, Mr. Ehr authorized David Keith to arrange for GA services, after which Keith signed the "July Services Agreement," Mr. Ehr did not approve individual or batches of text messages nor did he approve the costs or expenditures and was not generally involved in dealings with GA.

After receiving multiple text messages from someone soliciting fundraising services, Mr. Ehr did not recognize the sender and asked David Keith and Jake Briggs to check them out. When they told him the texts were from Grassroots Analytics, specifically Danny Hogencamp, he told them that he thought GA provided a good service in his 2020 campaign and encouraged them to consider them seriously, and if appropriate, arrange for appropriate GA services.

David Keith then negotiated and signed the contract. David Keith had the authority to manage the launch phase of the campaign. That involved many aspects, including fundraising activities. Mr. Ehr did not review the July Services Agreement prior to David Keith signing it. As the candidate, reviewing contracts was not his function. It was a campaign management function, which was then led by David Keith.

Paragraph 10 of the July Services Agreement provides that notices under the agreement are to be directed to Mr. Keith, not Mr. Ehr.

On page 6 in GA's filing, it states that "Mr. Ehr had 'extensive authority over the [Campaign],' he was the person who ultimately 'decided to go ahead and use [Grassroots'] service to send out text messages' and 'approved' the costs. See Ex. D (July 20, 2024 Exit Memo by J. Briggs Produced by Ehr Campaign)." (case citation omitted). This is not true, and Exhibit D does not say that. Mr. Ehr was not normally involved in the Campaign's texting program. His role was candidate. He relied on consultants, primarily David Keith and Jake Briggs, to manage the technical and trade aspects of the campaign, including relationships with the vendor GA. He did not approve the timing, size or cost, or final content of GA text messages. Additionally, he was not monitoring GA's performance per the contract. He relied on David Keith and Jake Briggs for that.

Once the campaign transitioned from the Senate to the House and David Keith left, Jake Briggs and Obi Umunna were responsible to manage the House campaign together. Specifically, the Committee delegated spending authority to the two of them together. Neither was authorized to approve spending without the other's concurrence.

This is simply insufficient to meet the standards of *Sabre*.

GA's allegations on pages 10–11 of its filing—suggesting that Mr. Ehr "commingled funds" or "diverted Campaign funds for personal use"—are false. There was no post-election trip to Walt Disney World. The cited $1,204.81 payment in November 2024 related to resolving a room charge dispute from the Florida Democratic Party's "Leadership Blue" event held at Walt Disney World in summer 2024. At the time of booking, campaign staff member Obi Umunna was scheduled to attend the event on behalf of the campaign. Before the event date, however, Mr. Umunna was hired by the Biden campaign and did not attend. The hotel reservation and associated charge remained on the campaign's account and required resolution in November 2024. All travel, food, and supply expenses reported after Election Day were tied to legitimate campaign activities, including ongoing fundraising efforts to retire campaign debt. At no time did Mr. Ehr convert campaign funds to personal use.

The *Sabre* standard is simply not met, even if it is applicable. Mr. Ehr has not in any way consented to this Court's jurisdiction over him. He lacks constitutionally-sufficient

minimum contacts with the District of Columbia. As such, this case must be dismissed as to Mr. Ehr.

DATED : **August 12, 2025**

                               Respectfully submitted,

                               *s/ Daniel M. Press*
                               Daniel M. Press
                               D.C. Bar No. 419739
                               CHUNG & PRESS, P.C.
                               6718 Whittier Avenue, # 200
                               McLean, VA 22101
                               Ph. # 703-734-3800
                               Fax # 703-734-0590
                               dpress@chung-press.com