# Exhibit 13

## Services Agreement

This services agreement ("Agreement") is made between: Phil Ehr for Senate("Client"), with a principal and Grassroots Analytics, LLC, ("GA"), with a principal place of business at 645 Prospect Hill Rd, Rutland, VT 05701, as of August 1st, 2023 (the "Effective Date").

1. **Term.** This Agreement is effective as of the Effective Date set forth above. This Agreement will remain in effect until terminated pursuant to Section 2 of this Agreement (the "Term").

2. **Termination.**

    A. Either party to this Agreement may terminate this Agreement by providing the other party to this Agreement with 30 days' written notice thereof.

    B. GA may terminate this Agreement if Client fails to pay GA within 30 days' of receiving an invoice pursuant to Section 2 of this Agreement.

    C. Client may terminate this Agreement if Client determines that GA has failed to use reasonable commercial efforts pursuant to Section 3 of this Agreement.

3. GA agrees to provide and Client agree to receive the following services (the "Services"):

    A. Conduct direct fundraising mail program as requested and instructed by Client;

    B. Copywriting, production, designing, delivery to printer, delivery to US Post Office, and delivery of mail pieces to donors;

    C. All other services agreed upon by the Parties in writing.

4. **Confidentiality.** For a period of 36 months following the Effective Date, the parties agree that the financial terms and conditions of this Agreement including, but not limited to, any and all information provided by GA to Client and by Client to GA are strictly confidential. Neither party will knowingly publicize or disclose or cause or knowingly permit or authorize the publicizing or disclosure of the terms and conditions of this Agreement for any reason, at any time, without the prior written consent of the other party. Notwithstanding the above, the parties may disclose information to their counsel, personal tax advisor or as may be required by law. The parties agree to the extent not prohibited under law, to instruct those to whom disclosure is allowed under this Agreement that its terms are confidential and must not be further disclosed.

    5. **Payment.** In consideration of the services to be provided pursuant to Section 3, the parties to this Agreement agree as follows:

    A. Client agrees to pay GA, the amounts specified below* in this Section 5(A):

GRASSROOTS_00004147

| # of PIECES, MIN. LEVEL | CLIENT COST PER PIECE |
|---|---|
| 5,000 | $1.21 |
| 15,000 | $0.94 |
| 25,000 | $0.88 |
| 50,000 | $0.86 |
| 75,000 | $0.85 |
| 100,000 | $0.82 |

*Pricing is subject to change, with notice to Client from LLC, based on market availability.*

B. Client shall pay the fees specified in Section 5(E) in advance of buys; GA shall submit an invoice for all other fees owed by Client, and Client shall pay all undisputed fees within 15 days of Client's receipt of an invoice for any services GA performs pursuant to this Agreement.

C. The parties to this Agreement agree that late payments from Client to GA will result in the following late fees subsequent to a five-day grace period from the day amounts due from Client become payable to GA.

*Table 2. Late Fee Accrual*

| Days Late | Late Fees (as % of Missed Payment) |
|---|---|
| 6-15 Days | 5% |
| 16+ Days | 10% |

D. Notwithstanding Section 4, the parties to this Agreement agree that Client's data will be subject to use by GA in order to improve its database in consideration for the Services that GA provides pursuant to Section 3 of this Agreement.

6. **Expenses.**

A. GA will be responsible for all expenses incurred while performing services under this Agreement, including travel expenses; equipment maintenance and repair costs; fees and permits; insurance premiums; and all salary, expenses, and other compensation owed for work performed pursuant to this Agreement.

B. Notwithstanding the foregoing, Client agrees to pay fair market value for any in-person services provided by GA to Client pursuant to this Agreement.

2

 C. Client will reimburse GA for any pass-through expenses at actual cost, which may include third-party charges for goods, raw materials, and/or use of equipment, that are paid directly by GA and are reasonably required by GA to provide the services pursuant to Section 3 of this Agreement. GA will use commercially reasonable efforts to minimize the amount of any and all pass-through expenses.

7. **Equipment.** GA will furnish all equipment, tools, and materials used to provide the services required by this Agreement. Client will not require GA to rent or purchase any equipment, product, or service as a condition of receiving payment pursuant to Section 2 of this Agreement.

8. **Independent LLC Status**

 A. GA and GA's employees are independent contractors and not employees, agents, joint venturers or partners of Client. GA will pay all taxes GA incurs in performance of this Agreement, including all applicable income taxes.

 B. GA is responsible for all tax returns and payments to any federal, state or local tax authority arising out of GA's performance of this Agreement and receipt of fees from Client. To the extent required by applicable law, Client will file a Form 1099 with the IRS, reporting all amounts that it pays to GA pursuant to this Agreement. Client will not withhold or make payments for social security; make unemployment insurance or disability insurance contributions; or obtain worker's compensation insurance on GA's behalf.

 C. GA understands that neither GA nor GA's employees or agents will be eligible to participate in any employee pension, health, vacation pay, sick pay, or other fringe benefit plan of Client for performance of this Agreement.

9. **Business Licenses, Permits, and Certificates.** GA will perform all services pursuant to this Agreement in compliance with all applicable laws and regulations, such as those governing the immigration and naturalization of GA's personnel, the health and safety of GA's personnel, requiring permits and/or a license, and all export administration regulations.

10. **Notices.** All notices given under this Agreement must sent and delivered via electronic mail, as follows:

Client will send notice to Katiana Person at kperson@grassrootsanalytics.com;

and GA will send notice to David Keith at Davidmkeith2023@gmail.com.

11. **Insurance.** Each party to this Agreement will use commercial reasonable efforts to respectively maintain professional liability insurance to cover any acts, errors and/or omissions arising out of the rendering of, or failure to render, professional services related to this Agreement.

A. Subject to the terms and conditions set forth in Sections 12(B) and 12(C), each party (as "Indemnifying Party") will indemnify, hold harmless, and defend the other party and its

3

3

managers, officers, directors, employees, agents, affiliates, successors, and permitted assigns (collectively, "Indemnified Party") against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including professional fees and reasonable attorneys' fees, that are incurred by Indemnified Party in a final judgment, administrative proceeding, or any alternative dispute resolution proceeding (collectively, "Losses"), arising out of any third-party claim alleging: material breach or non-fulfillment of any material representation, warranty, or covenant under/representation or warranty set forth in this Agreement by Indemnifying Party or Indemnifying Party's Personnel; any grossly negligent or more culpable act or omission of Indemnifying Party or its Personnel (including any reckless or willful misconduct) in connection with the performance of its obligations under this Agreement; or any bodily injury, death of any person, or damage to real or tangible personal property caused by the grossly negligent or more culpable acts or omissions of Indemnifying Party or its Personnel (including any reckless or willful misconduct); or any failure by Indemnifying Party to materially comply with any applicable federal, state, or local laws, regulations, or codes in the performance of its obligations under this Agreement.

Notwithstanding anything to the contrary in this Agreement, this Section 12(A) does not apply to any claim (whether direct or indirect) for which a sole and exclusive remedy is provided under another section of this Agreement.

B. Notwithstanding anything to the contrary in this Agreement, Indemnifying Party is not obligated to indemnify, hold harmless, or defend Indemnified Party against any claim (whether direct or indirect) if such claim or corresponding Losses arise out of or result from, in whole or in part, Indemnified Party's:gross negligence or more culpable act or omission (including recklessness or willful misconduct); or bad faith failure to materially comply with any of its material obligations set forth in this Agreement.

C. Payments by Indemnifying Party under Section 12 in respect of any Losses are limited to the amount of any liability or damage that remains after deducting therefrom any insurance proceeds and any indemnity, contribution, or other similar payment actually received by Indemnified Party in respect of any such indemnity claim, less any related costs and expenses, including the aggregate cost of pursuing any related insurance claims and any related increases in insurance premiums or other charge-backs. Indemnified Party will use its commercially reasonable efforts to seek to recover any insurance proceeds in connection with making a claim under this Section 12(C). Promptly after the realization of any insurance proceeds, indemnity, contribution, or other similar payment, Indemnified Party will reimburse Indemnifying Party for such reduction in Losses for which Indemnified Party was paid under Section 12(A) before the realization of reduction of such Losses.

D. SECTION 12 SETS FORTH THE ENTIRE LIABILITY AND OBLIGATION OF THE INDEMNIFYING PARTY AND THE SOLE AND EXCLUSIVE REMEDY FOR THE INDEMNIFIED PARTY FOR ANY DAMAGES COVERED UNDER SECTION 12.

E. Indemnified Party will give Indemnifying Party prompt written notice (a "Claim Notice") of any Losses or discovery of facts on which, Indemnified Party intends to base a

4

GRASSROOTS_00004150

request for indemnification under Section 12. Indemnified Party's failure to provide a Claim Notice to Indemnifying Party under this Section 12(E) does not relieve Indemnifying Party of any liability that Indemnifying Party may have to Indemnified Party, but in no event will Indemnifying Party be liable for any Losses that result directly from a delay in providing a Claim Notice, which delay materially prejudices the defense of the related third-party claim. Each Claim Notice must contain a description of the third-party claim and the nature and amount of the related Losses (to the extent that the nature and amount of the Losses are known at the time). Indemnified Party will furnish promptly to Indemnifying Party copies of all papers and official documents received in respect of any Losses.

    F. Indemnifying Party's duty to defend applies immediately, regardless of whether Indemnified Party has paid any sums or incurred any detriment arising out of or relating, directly or indirectly, to any third-party claim.

13. **Entire Agreement.** This Agreement is the entire agreement between the parties regarding the subject matter. Any addition to or modification of this Agreement must be in writing. No waiver will be effective unless it is in writing and signed by the party agreeing to the waiver and then it will be effective only in the specific instance and for the specific purpose for which it is given; no failure or delay in exercising any right will be considered a waiver of that right. If any provision of this Agreement is unenforceable, the remaining provisions will continue.

14. **Modification.** This Agreement may not be added to or modified without the express written consent of each party to this Agreement.

15. **Dispute Resolution.** The parties to this Agreement will attempt to resolve any dispute relating to this Agreement by good faith negotiation for ten (10) business days. The parties hereby submit to the exclusive jurisdiction of, and waive any venue objections against, the United States District Court for the District of Columbia and the Superior Court of the District of Columbia, in any litigation arising out of or in connection with this Agreement. Notwithstanding the foregoing, a party will have the right at any time to seek a temporary or permanent injunction or other equitable remedy or relief in any court having subject matter jurisdiction anywhere in the world.

16. **Limitation of Liability.**

    A. The purpose of this Section 16 is to limit the potential liability of both parties arising out of this Agreement and is reflected in the fees related to the Services. This Section 19 will apply despite any other provisions of this Agreement or the failure of the essential purpose of any remedy.

    B. Neither party to this Agreement will be liable for any indirect, special, incidental, or consequential damages, however caused, whether for breach of contract, negligence or otherwise, and whether or not it has been advised of the possibility of such damages. The parties' obligations under Section 4 are not subject to the limitations in this paragraph.

5

GRASSROOTS_00004151

C. PARTIES TO THIS AGREEMENT EXPRESSLY UNDERSTAND AND AGREE THAT TO THE EXTENT PERMITTED BY APPLICABLE LAW, CLIENT'S USE OF THE SERVICES PURSUANT TO SECTION 3 IS PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS, WITH ALL FAULTS. PARITY PARTIES EXPRESSLY DISCLAIM ALL WARRANTIES, REPRESENTATIONS, AND CONDITIONS OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT ARISING FROM USE OF THE SERVICES.

17. **Force Majeure.** Neither party to this Agreement will be liable to the other for damages caused by events beyond their reasonable control. If GA is delayed or prevented from performing the services pursuant to Section 3 of this Agreement for more than fifteen (15) days, then either party to this Agreement may terminate this Agreement pursuant to Section 2 of this Agreement.

18. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party, which will not be unreasonably withheld. No consent will be required for any assignment to an affiliate controlling, controlled by, or under common control with the assigning party. No consent will be required for an assignment made in connection with a merger, reorganization, or a purchase or sale of all or substantially all of the assets of the assigning party related to the performance of this Agreement.

19. **Attorneys' Fees.** In the event any attorney is employed by either party to this Agreement with regard to any legal action, arbitration or other proceeding brought by any party for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, then the party or parties prevailing in such proceeding, whether at trial or upon appeal, will be entitled to recover reasonable attorney's fees and other costs and expenses incurred, in addition to any other relief to which it may be entitled.

20. **Proprietary Information.** The product of all work performed under this Agreement, including without limitation, all notes, reports, documentation, drawings, computer programs, inventions, creations, works, devices, models, work-in-progress and deliverables will be the sole property of the GA, and Client hereby assigns, in perpetuity, to GA all rights, title and interest therein. All work performed under this Agreement is specially ordered or commissioned by Client and is a work made for hire. GA will retain any rights and or interest related to any pre-existing intellectual property.

21. **Applicable Law.** This Agreement will be governed by and construed under the laws of the United States and the District of Columbia as applied to agreements entered into and to be performed entirely within the District of Columbia between District of Columbia residents. This Agreement will be deemed to have been made and entered into in Washington, District of Columbia.

6

GRASSROOTS_00004152

22. **Control of Services.** GA has the sole right to control the method, details, and manner of performing the services pursuant to Section 3 of this Agreement, including to right to hire and manage GA's own personnel. GA retains the right to perform similar services for other clients. Unless agreed to by the parties to this agreement, GA will perform the services pursuant to Section 3 of this Agreement on its own premises and will provide all materials, tools and equipment needed thereto. GA will not subcontract or delegate its obligations under this Agreement without Client's prior written consent.

23. **Publicity and Announcements.**

    A. GA will not (orally or in writing) publicly disclose or issue any press or make any other public statement, or otherwise communicate with the media, concerning the existence of this Agreement or the subject matter hereof, without the prior written approval of Client which will not be unreasonably withheld or delayed), except to the extent that GA (based upon the reasonable advice of counsel) is required to make any public disclosure or filing with respect to the subject matter of this Agreement by applicable law.

    B. Each party to this Agreement agrees that the terms and conditions of this Agreement are Confidential Information, provided, that each party to this Agreement may disclose the terms and conditions of this Agreement (a) to the extent required by any court or other governmental body or as otherwise required by law, provided, that such party has first notified the other party immediately upon learning of the possibility of any such requirement and has given the other party a reasonable opportunity (and cooperated with the other party) to contest or limit the scope of such required disclosure (including application for a protective order); (b) to the extent required by the applicable securities laws, including, without limitation, requirements to file a copy of this Agreement (redacted to the extent reasonably permitted by applicable law) or to disclose information regarding the provisions hereof or performance hereunder; (c) to legal counsel; (d) in confidence, to accountants, banks and financing sources and their advisors; and (e) in confidence in connection with the enforcement of this Agreement or any rights hereunder. In furtherance of the foregoing, to the extent that the parties wish to issue a press release relative to their relationship, the parties will mutually agree to the content and delivery of any such press release.

24. **Non-Competition.** During the Term hereof, neither party to this Agreement will act, either individually or in partnership, or jointly or in conjunction with, any other individual as principal, agent, stockholder, officer, director, manager, employee, consultant, independent contractor, owner, member, partner, holder, advisor, or in any other manner whatsoever, directly or indirectly, carry on or be engaged in or be concerned with or interested in or advise, manage, own, participate in, encourage, support, lend money to, guarantee the debts or obligations of or permit GA's name to be used or employed by any Person engaged in or concerned with or interested in a business the same as, or similar to, the Business.

25. **Non-Solicitation.** During the Term, Party will not (i) contact, for the purpose of competitive business solicitation, any Person who is a supplier, employee, customer or client of GA or an Affiliate of GA, or (ii) contact any employee or executive of GA or an Affiliate of GA for the purpose of offering him or her employment with any Person other than GA.

7

26. **Remedies.** The parties to this Agreement agree that compliance with the covenants contained in Sections 4, 24, and 25 are necessary to protect the goodwill and proprietary interest of both parties to this agreement and that a breach of the agreements contained in such sections would result in irreparable continuing damages for which there will be no adequate remedy at law; and, in the event of any breach of such agreements, the wronged party will be entitled to the issuance by any court of competent jurisdiction of an injunction in favor of the wronged party enjoining such breach or violation of the covenants or agreements contained therein and such other and further relief, including damages, as may be proper; provided, that no request for or receipt of any injunction will be considered an election of remedy or waiver of any rights or any other remedy the wronged party may have against the breaching party, either at law or in equity. To the extent that any provision contained in this Agreement are deemed unenforceable by virtue of their scope, but could be enforceable by reducing any or all thereof, the parties agree that the same will be enforced to the fullest extent permissible under the laws and public policies applied in the jurisdiction in which enforcement, subject to Section 24. The parties to this Agreement agree that any period in which a breach of a covenant occurs will not count toward the applicable restrictive period of each such covenant.

27. **Liquidated Damages.** Each party to this Agreement agrees that any breach of the covenants or provisions contained in Sections 4, 24, and 25 will cause irreparable injury to the other party and its affiliates for which there is, and will be, no adequate remedy at law. The wronged party will be entitled, as liquidated damages from the other party, Fifteen Thousand United States Dollars (US $15,000) per breach, in addition to all other remedies, including, without limitation, injunction remedies and related attorneys' fees to also be paid to the wronged party by the other party for monies expended enforcing this Section 27 of the Agreement.

28. **Further Cooperation**. From and after the date of this Agreement, each of the parties hereto agrees to execute whatever additional documentation or instruments as are necessary to carry out the intent and purposes of this Agreement and or to comply with any law.

[SIGNATURE PAGE FOLLOWS]

8

**Signatures**

Client:

Phil Ehr
_____
Printed Name

Candidate
_____
Title

*[Signature: Phil Ehr — DocuSigned, A9BC07A7E4F8443...]*
_____
Signature

8/9/2023
_____
Date

_____
Taxpayer ID Number

_____
Personal Email Address (candidate and/or staff)

_____
Personal Phone Number (candidate and/or staff)

_____
Campaign Email Address

_____
Campaign Twitter Handle


LLC:

GRASSROOTS ANALYTICS, LLC
_____
Printed Name

*[Signature — DocuSigned, 3BE48D6290594D7...]*
_____
Signature

8/9/2023
_____
Date

  82-0594095
_____
Taxpayer ID Number

9