# Exhibit 39

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

PHIL EHR FOR CONGRESS
CAMPAIGN COMMITTEE,
          Plaintiff,

v.                                      Civil Action No. : 1: 24 - cv - 03035 - APM

GRASSROOTS ANALYTICS,
INC.

PLAINTIFF'S RESPONSES & OBJECTIONS TO
DEFENDANT'S IRST SET OF REQUESTS FOR ADMISSIONS

In accordance with the Federal Rules of Civil Procedure and the Rules of the U.S. District Court for the District of Columbia, Plaintiff PHIL EHR FOR CONGRESS CAMPAIGN COMMITTEE, for itself and for its predecessor-in-interest, the PHIL EHR FOR SENATE CAMPAIGN COMMITTEE, hereby provides its written Responses and Objections to Defendant's Second Set of Interrogatories.

**Interrogatory No. 4**: Identify all persons who assisted, or provided information utilized, in the preparation of the responses to these and any other interrogatories served in this case, specifying for each such person the assistance and/or information provided.

    Phil Ehr and Vanessa Brito, with the assistance of counsel, prepared the responses from their personal knowledge and documents in the possession of the Plaintiff.

**Interrogatory No. 5**: Identify each statement, and each person who on your behalf has obtained or attempted to obtain statements from any person, regarding the facts or circumstances of this

1

matter, and for each such statement identify the person making it or from whom it was attempted to obtain the statement, the date the statement was taken or requested, a detailed description of the contents of the statement, and the person who has custody or control of the statement.

No formal written statements have been obtained regarding the facts or circumstances of this matter. However, the following attempts were made:

1. Jim Kottmeyer, GPS Impact – In or about 2024, Vanessa Brito, on behalf of the Campaign, contacted Jim via phone to clarify David Keith's role in requesting lists and executing/approving fundraising activities. During this call, Jim stated he would provide an email regarding the agreement David Keith made with GPS Impact (Meadowlark).

2. Follow-up Email from Vanessa Brito to Jim at GPS Impact – After not receiving a response, Vanessa Brito sent a follow-up email to Jim (produced in discovery), requesting copies of communications regarding (a) the use of Sterling as a vendor, and (b) David Keith's request for GPS Impact to front or loan funds for list acquisition.

No response was received from Jim at GPS Impact, and no statement was provided.

**Interrogatory No. 6**: Identify (as defined above) each person referred to in the pleadings, or who you believe may have knowledge of facts relating to the allegations, claims, defenses, and claims for damages or other relief in this action, and for each such person specify the nature of the information he or she possesses, the portion of the claim(s) or defense(s) to which such knowledge applies, and whether you expect to have such person testify at any trial in this action. Include in your response all persons referred to elsewhere in your responses to these interrogatories.

See Initial Disclosures #1. In addition, representatives of Meadowlark Strategies including Trent Schacht may have such knowledge. Whether Plaintiff expects to have any such person testify at any trial in this action has yet to be determined. Trial witnesses will be identified as required by the Rules and Court orders.

**Interrogatory No. 7**: State all the facts you rely upon to support your contention that the services provided by Grassroots Analytics, Inc. "were either decidedly inadequate or not provided at all, failing to meet even minimal professional political fundraising standards," as alleged in Paragraph 3 of your Complaint. As part of your answer, please identify what sources you rely on to inform your understanding of "minimal professional political fundraising standards."

Based on review of Campaign records, transition files, vendor deliverables, and correspondence, the services provided by Grassroots Analytics, Inc. ("GA") were inadequate and did not meet minimal professional fundraising standards. Specifically:

1. Switchboard Lists – The Campaign obtained phone audiences for Switchboard broadcasts from GA. Upon downloading the lists, it was determined that the lists contained nothing beyond email addresses and/or mobile numbers. For some entries, a name was included, but no further identifying information was provided.

2. Absence of Targeting Criteria – The lists provided by GA contained no geographic information, no demographic information, no voter history, no contribution history, no tiering, and no segmentation. Without segmentation or targeting criteria, the lists were moot and unusable for donor prospecting or fundraising.

3. Invoices Lacking Detail – GA's invoices substantiate these deficiencies, as they did not identify list quantities, unique identifiers, donor segments, or other information that would ordinarily be expected in professional list rental or acquisition invoices.

4. Vendor Acknowledgment of Deliverability Problems – In David Keith's production, an email from Meadowlark to GA acknowledges "deliverability issues from launch"

3

and confirms the Campaign's understanding that the "Click Collective" was merely a shared data pool intended to "flesh out which names were worthwhile to attempt to re-activate." This was not the high-quality, curated donor acquisition service represented by GA.

5.   Supporting Documentation – The Campaign has produced the raw Switchboard lists, VAN deliverability reports, and other related documents. These materials confirm that GA's deliverables lacked demographic and geographic information and did not match the quality of donor lists produced by GA from their VAN committee account.

Taken together, these facts demonstrate that GA failed to provide donor data meeting even minimal professional fundraising standards. As a result, the Campaign was unable to conduct proper targeting, fundraising, or donor engagement, causing financial inefficiencies, reputational harm, and lost fundraising opportunities.

Plaintiff will identify expert witnesses as to minimal professional political fundraising standards in accordance with the Rules and Court Orders.

**Interrogatory No. 8**: Describe with particularity any and all instances where any Grassroots Analytics employee made any "representation[] that Grassroots Analytics had upgraded its databases and was able to provide high-quality lists of potential donors," Compl. ¶ 15, including the date any representation was made, the content of the statement and/or representation, who made the statement and/or representation, and who received or otherwise witnessed the statement and/or representation.

On July 17, 2023, at approximately 4:15 PM, Phil Ehr received a series of iMessages from Daniel Hogenkamp, an employee of Grassroots Analytics. In these communications, Hogenkamp represented that Grassroots Analytics possessed "the entire cell database for Florida" and that recipients "should all get your launch text." He further stated that "we have

4

tested and often scaled P2P on every major senate and house launch for 3 yrs. Not using us is like leaving Barry Bonds on the bench." The messages have been produced.

Hogenkamp also represented that Grassroots Analytics could raise "hundreds of thousands" of dollars for the campaign and compared their services to a "home run," suggesting superior performance relative to other options. These statements were presented as assurances that Grassroots Analytics had upgraded, high-quality donor and contact databases and proven capabilities to raise significant sums of money.

The representations were made directly by Daniel Hogenkamp of Grassroots Analytics to Phil Ehr. No other individuals are known to have been present during or witnessed this communication, but it was forwarded to David Keith.

It is believed that similar statements were made orally and possibly in writing to David Keith and possibly other Campaign representatives in order to induce the Campaign to hire G.A.

**Interrogatory No. 9**: Identify and describe with particularity every instance, if any, that the Campaign "received numerous max donations processed within the same time frame that were later contested by donors" and related "donor complaints," as alleged in Your Initial Disclosures, including the identity of the donor, the nature of their request to contest a donation or raise a related complaint, the amount of the contested donation, the date the donation was made and contested and/or the subject of a complaint, and the rationale for attributing any contested donation or donor complaint to any action or inaction by Grassroots Analytics.

During 2023 the Campaign received multiple maximum contributions of $3,300 within compressed timeframes that were subsequently contested by donors. These disputes resulted in refunds or chargebacks processed through ActBlue. The recurrence of these disputed contributions generated administrative costs, compliance exposure, reputational harm to the

Campaign and to candidate Phil Ehr personally, and diminished donor trust and future fundraising potential.

To the extent this Interrogatory requests detailed identification of each donor, contribution, and refund, the Campaign has produced responsive records. Specifically, the Campaign produced an export directly from ActBlue in a CSV file named "**ActBlueRefunds.**" That file includes donor identities, amounts of contested contributions, dates of contribution and refund/chargeback, and related donor complaints.

The Campaign incorporates by reference the ActBlueRefunds CSV file (produced herewith) in response to this Interrogatory.

The refunded donations at issue are attributable to texts sent by G.A., per ActBlue, prior to signing the contract, so it appears that G.A. used donor credit card data to make the charges in order to show high returns and convince the Campaign to retain G.A., and then the refunds were claimed typically shortly thereafter.

**Interrogatory No. 10**: Describe with particularity any and all instances where any representative of the Campaign communicated to any Grassroots Analytics employee that Grassroots Analytics breached a material term of the July Services Agreement, including the date **any communication** was made, the content of the communication, the medium the **communication** was delivered (e.g., email, text, via telephone, etc.), who delivered or made the **communication**, and who received or otherwise witnessed the communication.

**Concerns** were raised about poor list targeting and poor results in or about December **2023, and** in particular at a meeting on or about December 18 between G.A. and Jake Briggs, **Obi Umunna**, and Rob Ross Esq.

**Interrogatory No. 11**: State all the facts you rely upon to support your contention that the Campaign incurred $33,875 in "administrative, legal, and reputational costs associated with disputed contributions," and any "additional costs incurred to rectify operational inefficiencies," as alleged in your Initial Disclosures.

Upon further review of ActBlue records, compliance documents, and Campaign analysis, the damages incurred are greater than originally disclosed. According to the **ActBlueRefunds CSV export** produced in discovery, together with the Campaign's **Refund Analysis Report** and **Damage Assessment**, the Campaign incurred **total losses of $85,459.63** between July 18, 2023 (date the Services Agreement with Grassroots Analytics was executed by David Keith) and October 2023.

The breakdown is as follows:

**1. Direct Financial Damages**

- **Refunded Contributions:** $52,390.00 (94 refunds issued between July and October 2023).
- **Processing Fees:** $2,069.63 (lost payment processor/platform fees associated with refunds).

   **Subtotal – Direct Cost: $54,459.63**

**2. Internal Response & Compliance Costs**

- **Staff/Legal/Admin Labor:** $10,000.00 (time spent on donor communications, compliance refiling, accounting, and vendor escalation).

7

- **FEC Filing Amendments:** $2,500.00 (legal review and re-submission of amended finance reports to account for refunded max-out contributions).
- **Internal Systems Disruption:** $2,500.00 (reprogramming ActBlue/VAN fundraising sequences, workflow interruptions, and donor suppression fallout).

    **Subtotal – Operational Damage: $15,000.00**

3. Reputational and Opportunity Costs

- **Donor Retention Loss:** $5,000.00 (prospective donors lost after refund activity).
- **Lost Re-engagement ROI:** $2,500.00 (failure to secure follow-up donations from disputed/bounced contacts).
- **Public Perception Impact:** $3,500.00 (damage from public refund totals reported on FEC filings, creating perception of instability or impropriety).
- **Fundraising Momentum Lost:** $5,000.00 (lost opportunities during key fundraising periods due to corrective measures).

    **Subtotal – Reputational Harm: $16,000.00**

**Total Damages Estimate: $85,459.63**

**Conclusion:**

The Campaign's refund analysis, damage assessment, and ActBlueRefunds CSV (all produced in discovery) substantiate these amounts. Grassroots Analytics' failure to provide verified, segmented, and consent-based donor data directly caused the refunds, fees, compliance costs, and reputational harm outlined above. These deficiencies damaged the Campaign's fundraising capacity and donor trust, and harmed candidate Phil Ehr personally by undermining his credibility with current and future donors.

8

See Statement of Damages, produced herewith.

Interrogatory No. 12: Identify any communications with Grassroots Analytics about any possible payment plan to pay the invoices sent to You by Grassroots Analytics or any subset of those invoices, including the dates of such communications, the people involved in such communications, and the result of such communications. If such payment plan was refused, identify how such refusal was communicated and any supporting documentation.

There were various emails from G.A. about payment plans, but no agreement.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on August 20, 2025.

PHIL EHR FOR CONGRESS
CAMPAIGN COMMITTEE
By:

/s/ Phil Ehr
Phil Ehr

DATED:   August 20, 2025

/s/ Daniel M. Press
Daniel M. Press
D.C. Bar No. 419739
CHUNG & PRESS, P.C.
6718 Whittier Avenue, # 200
McLean, VA 22101
Ph. # 703-734-3800
Fax # 703-734-0590
dpress@chung-press.com

9